## CROCKER *vs.* THE NEW LONDON, WILLIMANTIC AND PALMER RAILROAD COMPANY.

A railroad corporation established, and gave public notice of, a regulation that the fare in their cars from N. to N. L., would be fifty cents, if it was paid, and a ticket procured by the passenger, before entering their cars ; otherwise it would be fifty-five cents ; and A, without a ticket, took a seat in one of their cars at N., and, when called upon by the conductor, after the cars had left for N. L., offered to pay fifty cents for his passage from N. to N. L., and refused to pay any more ; whereupon the conductor, with the aid of persons in the employment of the defendants, forcibly removed him from the car. Upon the trial of an action of trespass, brought to recover damages for the injury sustained by A, in such removal, he claimed to have proved that he went to the defendant's office, where their tickets were usually sold, at a reasonable time before the train left for N. L., to procure a ticket ; that said office was closed, and there was no one of whom a ticket could be procured, then or afterward, until after the departure of the cars, and that he informed the conductor of these facts at the time his fare was demanded ; and it was admitted that said regulation of the defendants was a reasonable and legal one. Held, 1. That, as common carriers, the defendants were under no legal obligation to furnish tickets, or to carry passengers from N. to N. L., for less than fifty-five cents each. 2. That the plaintiff's claim to such a passage for fifty cents, rested entirely on the assumed engagement of the defendants to furnish tickets, and the plaintiff's endeavor to procure one, defeated by the defendants. 3. That said regulation of the defendants was not a contract, creating a legal debt, or duty, but a mere proposal, which might be suspended, or withdrawn, at pleasure. 4. That such proposal was withdrawn by closing the defendant's office, and the retirement of their agent therefrom. 5. That, the proposition being withdrawn, the parties were in the same condition as before it was made ; the defendants, continuing common carriers, were bound to carry the plaintiff for fifty-five cents, but not otherwise. 6. That the plaintiff refusing said sum, the conductor had a right to remove him from the cars, using no unnecessary force for that purpose, and that, for such removal, the defendants were not liable in an action of trespass. Two judges dissenting.

Where, in such action, the court instructed the jury that, if the plaintiff was wrongfully removed from said car, he had a right to re-enter it, and if in his endeavor to do so, he received the injury complained of, he was entitled to recover, unless there was, on his part, a want of reasonable care, which produced, or essentially contributed to produce, such injury ; but if such removal was lawful, or if, in his attempting to re-enter it, there was, on the part of the plaintiff, a want of reasonable care or prudence, which produced or contributed to produce, such injury, he was not entitled to recover ; it was held, that such instruction was correct. Two judges dissenting.

Crocker *v.* The New London, Willimantic and Palmer Railroad Company.

Where, on such trial, the plaintiff claimed that, for the purpose of removing
and keeping him off from said car, the conductor called to his assistance, ser-
vants of the defendants, and in the effort to remove him, a struggle ensued,
before the termination of which, one of said servants intentionally kicked
him in the face, and the defendants claimed that such kick, if given, was
without the knowledge, and without any particular, or express, direction of
the conductor, or any other agent of the corporation, and the court charged
the jury, that, upon the facts as claimed by the plaintiff, the defendants were
liable in that action; it was held, that this was a misdirection. Two judges
dissenting.

This was an action of trespass, *vi et armis,* brought by
John H. Crocker against the New London, Willimantic, and
Palmer Railroad Company, to recover damages for personal
injuries, occasioned by his forcible removal from the defend-
ants' railroad cars.

The defendants pleaded not guilty; and, on this issue, the
cause was tried at Norwich, at the term of the superior court,
holden in December, 1854.

It was admitted, on the trial, that on the     day of De-
cember, 1853, after the defendants' cars had started from Nor-
wich for New London, and while on their way to the latter
place, the plaintiff, who had taken his seat in one of them, at
Norwich for New London, was called on by the conductor
of the train for his ticket, showing that he had paid his
passage. The plaintiff had not, and did not produce, any
ticket, and thereupon the conductor required him to pay
fifty-five cents for his said passage. This sum the plaintiff
refused to pay, but he offered to pay, and tendered fifty cents
therefor, which the conductor refused to receive. And on
the plaintiff's refusal as aforesaid, the conductor caused him
to be forcibly removed from the rear end of the car, and put
on the ground.

The question arose, as to the right of the defendants to
remove the plaintiff from said car; the plaintiff claiming that
the defendants had no such right, and were therefore liable
for the personal force, and injury, inflicted on him in such
removal and ejection, and the defendants claiming said right.

It was admitted that the defendants had previously established, and given public notice of, a rule, or regulation, that the fare for passengers in their cars, from Norwich to New London, should be fifty cents, if it was paid and a ticket procured by the passenger before entering the cars, but that if no such ticket was so paid for, and procured, before entering the cars, the fare should be fifty-five cents; and it was claimed by the defendants, and admitted by the plaintiff, on the trial, that said rule, or regulation, was a reasonable and lawful one. The plaintiff offered evidence to prove, and claimed to have proved, that on said day, and within a reasonable time before the leaving of said train of cars, for New London, he having the sum of fifty cents in his possession, went to the office of the defendants, at their station in Norwich, where passenger tickets were usually sold by the defendants, for the purpose of paying for and procuring of the ticket-master, or agent of the defendants, whose business it was to sell passenger tickets, a ticket for his passage from Norwich to New London, and was ready and prepared, to pay the sum of fifty cents for such ticket; but that neither said ticket-master or agent, nor any other person, was there to sell, or furnish, said ticket, but that said office was closed; that no person, authorized to sell such tickets, was at said office thereafter, before said cars left the station for New London; that the plaintiff therefore could not procure a ticket for a passage therefrom to New London, before the train left said station; and that thereupon, immediately before said train left said station, he entered and took a seat in said car, intending to go to New London. When said train had proceeded from Norwich about the distance of    miles, and the plaintiff was called on as aforesaid, for a ticket, he stated to the conductor, that he had no ticket, and also stated the reason why he had not any, and the facts aforesaid, in relation to his effort to procure one, and his inability to do so; whereupon the conductor demanded that the plaintiff should pay fifty-five cents for his passage from Norwich

to New London ; the plaintiff refused to, and did not pay, said fifty-five cents, but tendered fifty cents, and requested the conductor to receive the same for his passage, which the conductor refused to, and did not do, but on the plaintiff persisting in his refusal to pay more than fifty cents, the conductor caused the train to be stopped, and with the assistance of several persons employed by the defendants in conducting the train, forcibly removed and ejected the plaintiff, against his will and remonstrance, out of the rear end of the car in which he was, and put him on the ground.

The defendants denied that the plaintiff applied at said ticket-office for a ticket, within a reasonable time, before said train left Norwich, or that the plaintiff, when called on by the conductor for a ticket, gave the information, or made the statement, as claimed to be proved as aforesaid. And the plaintiff claimed, and requested the court to instruct the jury, that if they should find the facts to be as claimed to be proved by him, he had a right to retain his seat, and the defendants had no right forcibly to remove and eject him from said car, and that they were liable to the plaintiff for the personal injury occasioned thereby ; and the court charged the jury in accordance with this request.

The plaintiff, in addition to other personal injuries to him, offered evidence to prove, and claimed to have proved, that when he was ejected from said car, he was thrown upon the ground with such force, and in such a manner, that his knee-pan was broken, for which injury he also claimed to recover, and also claimed to have proved, that, if he did not so receive said injury to his kneepan, at the time when he was ejected from said car, said train of cars was again put in motion by the defendants, immediately after the plaintiff was so ejected, and that immediately before he received said injury to his kneepan, for the purpose of again entering said car, he took hold of the car at the rear end thereof, with one or both of his hands, and followed it while it was in motion, and attempted to enter it, and that the motion of said car, which

was constantly increasing in its velocity, became so fast, that the plaintiff was unable to keep up with it, and was obliged to quit his hold thereof, and that when he so quit his hold, he, by the motion of the car, was detached therefrom, and thrown upon the ground, and that, in so falling, his knee struck upon the ground, or on some substance lying thereon, whereby his kneepan was broken; and that, in what the plaintiff so did, after he was so removed from said car, there was not, on his part, any want of reasonable care, or prudence, which produced, or contributed essentially to produce, said injury to his kneepan. And the plaintiff claimed and requested the court to instruct the jury, that if his kneepan was not so injured, at the time when he was so removed from said car, but was injured afterward, and after said train again started, and the facts were, as claimed by the plaintiff to have been proved by him, he was entitled to recover for said injury, provided the defendants had no right to remove and eject the plaintiff from said car, and the plaintiff had a right to remain therein, when he was removed therefrom. The defendants insisted that the injury to the plaintiff was not received when he was so removed, but afterward, and they claimed to have proved that when said injury was received, there was, on the part of the plaintiff, a want of reasonable care and prudence, which produced, or contributed essentially to produce, the injury, and claimed that such want of reasonable care and prudence precluded him from recovering for said injury, and that the court should so charge the jury. The court, on this subject, charged the jury, that if they should find, on the principles before stated to them, in relation to the right of the defendants to remove the plaintiff from said car, that he had, when so removed, a right to remain in said car, and that the defendants had no right to remove him therefrom, he had a right to re-enter said car, after having been so removed therefrom, and that the injury to his knee was received, not at the time when he was so removed, but afterward, and after said train was again put

in motion by the defendants, and that the facts, occurring
after said train was again put in motion, and until, and when
said injury was received, took place, and were as they were
claimed to be proved by the plaintiff, and said injury occur-
red after said train was again put in motion, in the manner
claimed by the plaintiff to have been proved by him, and
there was not any want of reasonable care or prudence on
the part of the plaintiff, which produced, or contributed essen-
tially to produce, said injury, the plaintiff was entitled to
recover for said injury; but that, if they should find that the
defendants had a right to remove, or eject, the plaintiff from
said car at the time they did so, or that there was, on the
part of the plaintiff, a want of reasonable care, or prudence,
which produced, or contributed essentially to produce, said
injury to his knee, he was not entitled to recover for said
injury.

The plaintiff offered evidence to prove, and claimed to have
proved, that while said persons, in the employment of the
defendants, were removing him from the car, there was a
struggle between them and the plaintiff, in which the plain-
tiff endeavored to prevent said persons from removing, or
keeping him from, or out of, said car; that a part of the inju-
ries which he received, when he was so removed, were occa-
sioned by a kick, or blow on his face, given with the foot
intentionally by one of said persons in the employment of
the defendants, who assisted the conductor in removing the
plaintiff, after he had become detached from said car, and
immediately on the plaintiff coming off from the car to the
ground, the person giving said kick while standing on
the car, at the rear end thereof, and the plaintiff being on the
ground, when said kick was given; the struggle not having
terminated at that time. And the plaintiff claimed, and re-
quested the court to instruct the jury, that the defendants
were liable for the injury received by said kick. The defend-
ants offered evidence to prove, and claimed to have proved,
that said kick or blow, if given to the plaintiff at all, which

the defendants denied, was given without the knowledge, or any particular or express direction of the conductor, or any officer or agent of the defendants, and requested the court to instruct the jury, that if it was given without any such knowledge or direction, the defendants were not liable for said injury.   The court, on this point, omitted to charge the jury, as requested by the defendants, but charged them, as requested by the plaintiff.

The jury returned a verdict, for the plaintiff, to recover of the defendants six thousand and five hundred dollars damages, and costs.

The defendants moved for a new trial, on the ground that the charge was erroneous, and also that the damages were excessive.

The disposal of the case by this court, renders unnecessary a detail of the evidence, which was embraced in the latter motion.

*Foster* and *Lippitt*, in support of the motion.

I.  Railroad corporations are common carriers, and as such, as a general rule, are bound to take such persons as apply for a passage.   Angell on Carriers, § § 524, 525.

II.  The *prima facie* duty of such corporations to receive passengers, who apply for a conveyance, is subject to the qualifications, 1.  That the persons, applying, shall be fit persons.   2.  That they conform to the rules, and regulations, of the carrier, established for his own benefit.   For railroad corporations may establish such rules and regulations, " as are suitable to enable them to perform the duties they undertake, and to secure them in their just rights in such employment." *Commonwealth* v. *Powers*, 7 Met., 596.

Rules, which might not be necessary at the *termini* of a road, may be essential at a way station.   The rule, requiring the ticket agent to attend to freight also, is essential, to enable this company to perform the duties they have undertaken.

III.  As the carrier is bound to receive and carry passen-

gers, as a general rule, so he is also entitled to be sure of his reward and compensation. Angell on Carriers, § 609.

The right to establish fares, includes and carries with it the right to regulate the time, place, and manner, of receiving them, and the person to whom payment shall be made. In this case, the time was present payment, the place was in the cars, and the person was the conductor. The tariff of fare, was fifty-five cents, between Norwich and New London. The rule of the company required the passenger to pay the cash-fare to the conductor, or to tender him a receipt for payment, or in other words, a ticket. A ticket was the only evidence to be recognized as payment. The conductor was not required to know the price of a ticket. The ticket system, was established for the convenience of the company, and the passenger, to facilitate and render certain the collection of fares. A ticket is considered the sole voucher for the payment of fare. Angell on Carriers, § 609. *Cheney* v. *Boston and Maine Railroad Company*, 11 Met., 121. Angell on Carriers, § 530, Note.

IV. If the rules established by the defendants were reasonable, they had a right to enforce them ; for common carriers may rigidly enforce all reasonable rules, established for the promotion of their pecuniary interests. *Commonwealth* v. *Powers*, 7 Met., 596. *Jenks* v. *Coleman*, 2 Sum., 221.

V. The plaintiff had not the same rights as he would have had with a ticket. For if he had, the conductor would violate the rule which prescribed that he should collect the cash fare.

Whether he may, or may not, insist on the rule, is made, by the charge of the court, to turn on the question, whether he applied within reasonable time. It is impossible for the conductor to determine this, for it must depend on circumstances. The charge deprives the defendants of the benefits of the rule, as such, and reduces it to a topic for debate.

The regulation of the company not only proposed to sell

tickets at reduced rates, but required the conductor to demand cash fare of those who did not tender a ticket. The plaintiff only offered to comply with a part of the rule. If the rule existed, and was reasonable, the company might enforce it. The plaintiff's only remedy was by an action for refusing to sell him a ticket.

VI. In attempting to get upon the car, when it was in motion, the plaintiff was guilty of carelessness.

VII. The defendants are not liable for the wanton injury done by their servants, without their knowledge or direction. The kicking, if done at all, was not authorized, but was done after removal from the cars.

*Wait*, and *E. Perkins*, against the motion.

1. The defendants were bound, by their notice, to furnish tickets to all applicants, and this contract required that they should furnish all reasonable facilities to enable parties to obtain tickets. If the plaintiff applied for a ticket at the office, under this notice, at a reasonable time, but could not obtain one, and stated these facts to the conductor, he did all that he could be required to do, under the notice, and his payment of fifty cents, or tender of that sum, imposed on the company the legal obligation, to carry him from Norwich to New London. Whether the plaintiff, in fact, applied at the office for a ticket, or applied within a reasonable time, and whether he paid or tendered the fifty cents, and the agent of the company, in charge of the train, had knowledge of these facts, were questions of fact to be determined by the jury.

2. If the plaintiff had originally a right to remain in the car, and the defendants had no right to eject him, he then had a right, when ejected, again to enter the car, and even, if, as the defendants claimed, his knee was not injured, when he was first ejected from the car, but was injured afterward, and after the train was again in motion, and while he was attempting to re-enter the car, unless there was, on his part,

a want of reasonable care, and prudence, which contributed essentially to produce such injury, he was entitled to recover. Whether the plaintiff exercised ordinary care and prudence, when attempting to re-enter the car, was not a question of law for the court to decide, but a question of fact for the jury to determine, from all the circumstances of the case. *Birge* v. *Gardner*, 19 Conn. R., 507. *Beers* v. *H. Railroad Company*, 19 Conn. R., 566. *Park* v. *O'Brien*, 23 Conn. R., 339.

3. The principle is well settled, that the master is answerable for the acts of the servant, done in the course of the servant's ordinary employment, and that an action of trespass will lie against the master for the tortious acts of the servant, if done in the course of such ordinary employment, although the servant's act was not necessary to the proper performance of his duty to his employer, or was contrary to his employer's orders. *Goodloe* v. *The City of Cincinnati*, 4 Ham., 500. *Croft, &c.*, v. *Alison*, 6 E. C. L. R., 528. *Joel* v. *Morison*, 25 E. C. L. R., 511.

If a man, employed to force the plaintiff from the cars, or to prevent his re-entering them, in the course of such employment, kicked him, the defendants are liable, even if this was done without their knowledge, and against their directions. *Hall* v. *The Connecticut River Steamboat Company*, 13 Conn. R., 319.

4. To justify a court in setting aside a verdict for excessive damages, they must be so palpably excessive, as to show conclusively that the minds of the jury were not open to reason, and conviction, or that an improper influence was brought to bear on their deliberations.

The rule, to this extent, has been repeatedly sanctioned by the supreme court of this state. *Woodruff* v. *Richardson*, 20 Conn. R., 238. *Clark* v. *Wheeler*, 19 Conn. R., 319. *Coffin* v. *Coffin*, 4 Mass. R., 1. *Clark* v. *Binney*, 2 Pick., 113. *Shute* v. *Bartlett*, 7 Pick., 82–6. *Moody* v. *Baker*, 5

Conn. R., 351. *Douglas* v. *Tousey*, 2 Wend., 352. *Southworth* v. *Stevens*, 10 Johns., 443.

SANFORD, J. The defendants were a railroad corporation, running regular trains of cars on their road between the cities of Norwich and New London, and transporting passengers in said cars, as a part of their business.

They had established, and given public notice of " a rule or regulation," that the fare for passengers, in their cars from Norwich to New London, should be fifty cents, if it was paid and a ticket procured by the passenger before taking his seat in the cars, otherwise it should be fifty-five cents.

The plaintiff took a seat in the car, without a ticket, and when called upon by the conductor of the train, offered to pay fifty cents for his passage to New London, but refused to pay any more. And upon the trial, he claimed to have proved that he went to the office of the company, where tickets were usually sold, at a reasonable time before the starting of the train, to procure a ticket, which he was ready to pay for; that he found the office closed, and that there was no person at the office of whom a ticket could be obtained, at that time, or afterward, until after the departure of the train, and that he informed the conductor of these facts at the time his fare was demanded. And the court charged the jury in substance, that, if the facts were as claimed by the plaintiff, he had a right to retain his seat; the conductor had no right forcibly to remove him from the car, and the defendants were liable to the plaintiff for the personal injury to him, occasioned by such removal.

The first enquiry arises upon this part of the charge.

The defendants were common carriers of passengers, and as such, they were bound (except in certain peculiar cases, which need not here be specified) to carry all who applied for transportation, upon payment of their reasonable compensation; and they had the right to prescribe reasonable rules, and regulations, regarding the performance of their

obligations and the collection of their dues. Angell on Carriers, § 524, (2,) 530. 4 Esp., 260. 7 Met., 596.

In this case, it was agreed on the trial, that the regulation of the company, regarding their fare as above-mentioned, was a reasonable and legal one. It was, probably, established for the protection of the company against the errors, and possible frauds, of the conductors of its trains, while, at the same time, it would facilitate the performance of the conductors' duties.

It was notified to the public, in order that passengers might be induced, and prepared, to conform to it. As a rule for the government of the conductor, it was imperative. It made it his duty to account, at the treasury of the company, for the fare of every passenger, by the delivery there, of a ticket, or of fifty-five cents in money. It gave him no discretionary power.

It is of no importance in this enquiry, whether the rule was wise or efficacious, for the purpose for which it was established, or not; it is enough, that it was reasonable and legal; one which the company had a right to make, and to enforce, and the only legitimate enquiry would seem to be, what was the rule, and what its import and effect. The passenger's right to his passage must depend, either upon the common law *obligation* of the carrier to carry all who apply, or upon some special contract of the carrier. The common law obligation attaches only upon the payment of, or readiness to pay, the carrier's reasonable compensation, and compliance with the carrier's reasonable regulations.

It is said that the admitted reasonableness of the regulation mentioned, is applicable to that regulation only as a whole, and not to its distinct alternatives, independent of each other. I think, that by fair construction of the motion, it appears that fifty-five cents, payable to the conductor in the car, was a reasonable price for the passage. It is agreed, that that sum was refused by the plaintiff; the common law obligation to carry the plaintiff, then, had not attached upon

the defendants, and the plaintiff, under that obligation merely, had no right to retain his seat. But the plaintiff contends, that the defendants, having published this regulation, were bound to furnish tickets, and, for that purpose, to keep an office, and an agent in attendance at all reasonable times. It is obvious, that the law, independent of any special contract, imposed no such duties upon the defendants. Those duties, therefore, and their correlative rights and obligations, if they existed, originated in the rule, or regulation, and its promulgation, and were founded only upon the supposed special undertaking of the company expressed or implied, in that regulation. It becomes important, then, to ascertain the exact import of that regulation, and its effect in imposing upon the defendants a binding legal obligation.

That the meaning and import of the regulation were what the plaintiff claims, may be conceded ; but did it, like a valid contract, impose upon the defendants a legal obligation, from which they could not recede at pleasure? Was the rule thus promulgated, and thus construed, a contract?

I think it was in the nature of a mercantile advertisement, rather than a contract; proffered on one side, to be closed by a mere acceptance on the other. Such advertisements, it is believed, are now considered, or treated, as proposed contracts, to the performance of which, the advertisers may be held by a mere acceptance, without further negotiation. For example, could a merchant advertising goods for sale, at a price specified, be subjected, in an action at law, if he should raise the price, or withdraw the goods altogether from the market?

But suppose that published rule was a proffered contract, which might be closed by a mere acceptance ; like all other proposals, until accepted, it might be withdrawn at pleasure.

It has been already remarked, that the defendants' obligation to furnish a ticket, and the right of the plaintiff to obtain one, on request, if such right and obligation existed, must have had their foundation entirely in the supposed special

undertaking which the published regulation of the defendants imported ; and, in this connection, it may be added, that, independent of any special contract, the whole duty of the defendants toward the plaintiff, was to carry him for a reasonable compensation in money. The defendants were ready to carry him, but he refused to pay them their reasonable compensation of fifty-five cents, and insisted upon holding them to their proposition to furnish a ticket, or its equivalent in a passage, at the price of a ticket. His right to retain his seat, therefore, depended not on the common law obligation of the carriers, but upon the assumed special undertaking of the defendants to furnish and carry for a ticket. The breach of that assumed undertaking is the gist of the plaintiff's complaint.

His claim is, that having, on his part, done everything required by the defendants' regulation, to entitle himself to a ticket, and having failed to obtain one, through the fault of the defendants, he has, as against them, acquired the same rights, as if his efforts to obtain such ticket had been successful. However true the legal principle involved in this claim may be, that principle has no application in the case before us. The published regulation being a mere proposal, until accepted, imposed upon the defendants no legal duty ; the minds of the parties not having met, no contract between them had been made. Before the plaintiff's appearance, the agent had closed the office, and retired, and so the proposal was withdrawn, and withdrawn before acceptance. An intention, or a readiness, to accept an offer, is a very different thing from an actual acceptance. True, according to the plaintiff's claim, his failure, by a timely acceptance of the offer, to make a binding contract, was chargeable entirely to the defendants, but still there was no actual acceptance of the proposal, no uniting of the minds of the parties, and no contract made.

Again. There can be no breach of a contract, until the contract itself has been first completed by the meeting of the

minds of the parties to it.  Here, the assumed breach, on the part of the defendants, occurred when the agent withdrew, and closed the ticket office, but that was before the appearance of the plaintiff at the office, and, for aught that appears, before his mental determination to apply for a ticket, and, certainly, before any notice, express or implied, actual or constructive, of such determination, was given to the defendants or their agents.  Closing the office was, for the time, at any rate, a most effective withdrawal of the proposal to furnish tickets, and, necessarily, communicated notice of such withdrawal to the plaintiff.  The conclusions, upon this view of the question, are, 1. As common carriers merely, the defendants were under no legal obligation to furnish tickets, or to carry passengers for less than fifty-five cents in money, that being agreed to be a reasonable price.  2. The plaintiff's claim to a passage, as if he had a ticket, rested entirely on the assumed engagement of the defendants to furnish tickets, and the plaintiff's endeavor to procure one, defeated by the defendants themselves.  3. The published regulation of the defendants was not a contract, creating a legal debt or duty, but a mere proposal, which might be suspended, or withdrawn at pleasure.  4. It was suspended, if not withdrawn, by the closing of the office, and the retirement of the agent. 5. The proposition being suspended or withdrawn, the parties were in the same condition, as before it was made.  The defendants, continuing common carriers, were bound to carry for their reasonable compensation, fifty-five cents, but not otherwise.

By the very terms of the original regulation, upon one alternative of which the plaintiff relies, if a ticket was not paid for and procured by the passenger, before entering the car, his fare should be fifty-five cents.  When the plaintiff entered the car, without his ticket, he knew the terms on which the defendants proposed to carry him ; he made no objection to those terms, until after the train had started, and so entering the car and proceeding on the way, he must be

taken to have acceded to the proposition, and agreed to pay the price which the rule required. Suppose that the defendants, instead of removing the plaintiff from the car, upon his refusal to pay the fifty-five cents, had carried him through, and then sued him for their compensation. Could the facts, disclosed in this motion, have been set up in bar of the suit? I think not.

Upon the whole, I think that the plaintiff refusing to pay the fifty-five cents, the conductor had a right to remove him from the car, using no unnecessary force for that purpose, and that for such removal, the defendants ought not to be subjected in this action, and, consequently, that the charge, on this point, was wrong.

Upon the second point, the legal principles, enunciated in the charge, are in my judgment correct. If the plaintiff was wrongfully put out of the car, he had a right to re-enter, and if in his endeavor to do so, he received an injury, in the manner stated in the motion, he was entitled to recover for such injury, unless there was, on his part, a want of reasonable care and prudence which produced, or essentially contributed to produce, said injury. But if the plaintiff's removal from the car was rightful, or if, in his attempting to re-enter, there was on his part a want of reasonable care, or prudence, which produced, or contributed essentially to produce, said injury, then he was not entitled to recover for it.

The plaintiff claimed that, for the purpose of removing him from the car, and keeping him off, the conductor called to his assistance a servant of the defendants; that thereupon a struggle ensued between the plaintiff, on the one side, and the conductor and his assistant on the other, and that before the termination of the struggle, and immediately upon the plaintiff's coming from the car to the ground, the servant intentionally kicked him in the face. The defendants claimed that such kick, if given, was without the knowledge, and without any particular, or express, direction of the conductor, or any other officer, or agent of

the company.   And they prayed the court to charge the jury that, without such knowledge, or direction, they could not be held liable.

The court charged the jury that, upon the facts, as claimed by the plaintiff, the defendants were liable for the kick, and omitted to charge, as requested by the defendants.

The jury should have been instructed in substance, that, if the kick was given by the servant, for the purpose of keeping the plaintiff off from the car, and was, under the circumstances, but the exercise of necessary and proper force for that purpose, the defendants were responsible for it, provided the plaintiff had been wrongfully put out, and had a right to re-enter; but, if he had no right to re-enter, then the kick was justifiable.   But, if such kick was not necessary, and proper, for the purpose of keeping the plaintiff off, and was by the servant intentionally given, without the knowledge or direction of the conductor, or any other officer or agent of the company, the defendants were not liable for it.

The liability of the master for acts of his servant seems to depend upon the question, whether the servant, at the time, and in the particular in question, was acting under, and in execution of, authority from the master.   Salk., 282.   20 Conn. R., 284.

In this case, the servant was called to assist the conductor, and may be considered as having a general order, or command, to keep the plaintiff off; but that order authorized the employment of none but usual, and legal, means for the purpose, and the intentional employment of such an unusual, unnecessary, and unjustifiable measure, as a kick in the face, could not have been contemplated by the conductor, and, in the absence of proof, the law will not deem it authorized by him.

In Noyes' Max., ch. 44, it is said, " If I command my servant to distrain, and he ride on the distress, my servant shall be punished, not I."

This authority is cited with approbation by Lord Ellenbor-

ough, Ch. J., in *McManus* v. *Cricket*, 1 East, 106, and seems to stand upon the principle that an order to do a lawful act, which may be, and ordinarily is, done in a lawful manner, confers authority to do the act in that manner only, for that manner only, is presumed to be in the contemplation of the parties. If, therefore, the servant does it otherwise, he exceeds his authority, and he alone is liable for it. 2 Kent's Com., 284. 35 E. C. L. R., 448. 17 Mass. R., 508.

But whether the defendants would be liable, or not, in a proper form of action, it is quite clear they are not liable in trespass. In order to render the master liable for the servant's act, in trespass, it must be shown that the act was done in the execution of the master's order, or with his assent, or approbation.

And where it is shown that the act was done without his knowledge, or direction, his silence can not operate against him. 20 Conn. R., 284. 2 Met., 606.

But this question has been so recently under examination in this court, in the case of *The Thames Steamboat Company* v. *The Housatonic Railroad Company*, ante p. 40, decided at the last term, and has been so thoroughly discussed by the judge, who gave the opinion of the court in that case, that the further consideration of it seems now unnecessary.

I advise that a new trial be granted.

In this opinion, WAITE, Ch. J., concurred.

HINMAN, J., concurred in advising a new trial, but not for the reasons assigned by the majority of the court.

He thought the only error of the court below, consisted in so putting the case to the jury, as to have it turn upon whether the plaintiff applied for a ticket at a reasonable time before the train left, and was unable to obtain one. In his opinion, the office for the sale of tickets might have been open the greater part of the day, previously to the leaving of the train, and yet been closed a few minutes before, in con-

formity to their general practice. If this was so, then he thought the plaintiff had a reasonable opportunity to obtain a ticket, and neglected to improve it. He thought, therefore, the proper question was, not whether the application for a ticket was made at a reasonable time before the train left, but rather, whether a reasonable opportunity was given by the defendants, in which a ticket could have been obtained, had the plaintiff used due diligence to procure it.

STORRS, J., concurred with Hinman, J., in his dissent from the views of Judges Waite and Sanford. He was also of opinion that, as the case was presented on the trial, the question, on which it was put to the jury, as to the right of the defendants to eject the plaintiff from their cars, was substantially, although not in terms, the same as that on which Judge Hinman thought the verdict ought to depend; and therefore that a new trial should not, on that ground, be advised.

His views on the case will be given in a subsequent part of the volume.

New trial to be granted.