IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1867, IN THE FIFTY-FIRST YEAR
OF THE STATE.

———————◆———————

THE JEFFERSONVILLE RAILROAD COMPANY *v.* ROGERS.

PASSENGER FARES.—TICKETS.—A railroad company may discriminate in
its passenger fares in favor of those who purchase tickets before entering
the cars.

SAME.—Such a regulation, however, carries with it an obligation on the
part of the company to afford an opportunity to passengers to purchase
tickets, and unless such an opportunity is given the discrimination cannot
be made.

EXPULSION OF PASSENGER.—Under the special charter of the *Jeffersonville
Railroad Company*, which is silent upon the subject, if there is lawful
cause for the expulsion of a passenger from the cars, he may be expelled
between stations.

MEASURE OF DAMAGES.—Where a passenger who has been denied an oppor-
tunity to purchase a ticket is expelled from the cars because of his re-
fusal to pay an increased rate of fare, the difference between the two
rates of fare is not the measure of his damages. The act being wrongful,
the company is responsible for its consequences.

SAME.—EXEMPLARY DAMAGES.—The rule as to the allowance of exemplary
damages in suits against natural persons, applies equally to suits against
corporations.

VOL. XXVIII.—1

RATES OF FARE.—The rates of fare of a railroad corporation need not be established by the board of directors and proved by a record of their action. Agents, other than the directors, may be empowered to regulate such matters.

APPEAL from the *Bartholomew* Common Pleas.

FRAZER, J.—This was a suit by the appellee against the appellant for unlawfully expelling the appellee from its cars. The complaint alleged that the defendant's ticket agent refused to sell a ticket to the plaintiff; that he thereupon seated himself in the car without such ticket, for the purpose of being carried from *Indianapolis* to *Columbus*, and tendered the usual ticket fare to the conductor, who refused that sum and demanded a greater sum by fifteen cents; and upon a refusal by the plaintiff to pay the sum demanded, he was, by the defendant, expelled from the vehicle three miles from a station.

The answer was in two paragraphs. The first was a general denial, under which the matter pleaded in the second was admissible in evidence, and there was therefore no available error in sustaining a demurrer to the latter.

Various questions are made upon the instructions to the jury, and as to the admissibility of evidence, all of which are in the record by an unsuccessful motion for a new trial, there having been a verdict for the plaintiff in the sum of $345.

The evidence established the averments of the complaint upon every point, save that the plaintiff had applied for and been refused a ticket. Upon that subject, there was a conflict. It appeared, too, that the appellant discriminated in its charges for passage in favor of persons holding tickets; the usual rate, if paid on the train, being $2 10, and the usual rate for a ticket $1 95. That the ticket agent was at the time supplied with tickets, and instructed to sell them, was clearly proven. Tickets were sold to other persons at that time, and for *Columbus*. If, therefore, he refused a ticket to the appellee, it was of his own motion and in violation of his duties as agent of the appellant. The appellant existed under a special charter,

(local laws of 1846, p. 153,) which gave it full power to fix its rates of passenger fares, "provided that the rates established from time to time shall be posted up at some conspicuous place or places on said road;" and this had been done as to the rates then usual, both for tickets and when payment was made on board to the conductor.

It is not controverted that the appellant had the right, for its own protection against the possible dishonesty of conductors, and for the convenient transaction of its business, to discriminate in favor of persons purchasing tickets. The regulation is a reasonable one, if carried out by the corporation in good faith. It tends to protect the corporation from the frauds of its conductors, and from the inconvenience of collecting fares upon its trains in motion; and it imposes no hardship whatever upon travelers. But if the corporation may refuse to furnish the tickets, and thus fail to do what is plainly implied by the adoption and publication of the rule, it would be unreasonable and therefore not binding upon its passengers. Such a corporation cannot be sustained, in so far as it assumes to be the arbitrary master of its patrons. It is a common carrier of passengers, and must perform the obligations which the law imposes upon it as such. It has no lawful authority to impose upon travelers by vexatious and deceptive rules and regulations, such as the one under consideration would obviously be, if it does not carry with it an obligation on the part of the corporation to afford passengers the opportunity to avail themselves of the discrimination in fares which it publicly offers. That such an obligation does arise out of the adoption of such a regulation was expressly ruled in *Illinois. Chicago, &c., Co.* v. *Parks,* 18 Ill. 460, and *St. Louis &c. Co.* v. *Dalby,* 19 Ill. 353. The latter case is precisely in point here, it being held that the passenger, having been unable to procure a ticket through the fault or neglect of the railroad company's ticket agent, had a right to be carried at the ticket rate, and that upon tender of that sum to the conductor, his subsequent expul-

sion from the train was a wrong for which the corporation was liable.

In *New York*, the subject has been regulated to some extent by statute. To ask or receive a greater rate of fare than that allowed by law, entitles the passenger to recover the sum of fifty dollars as a penalty. The *New York Central Railroad Company* is required to keep its ticket office at *Utica* open for the sale of tickets for an hour prior to the departure of each train, but it is not required to keep such office open between 11 o'clock P. M. and 5 o'clock A. M.; and if a person at any station where a ticket office is open enters the cars as a passenger, without a ticket, the company may charge five cents in addition to the usual fare, which is fixed at two cents per mile. In *Nellis* v. *New York Central Railroad Company*, 30 N. Y. 505, where a passenger from *Utica* entered the train without a ticket, at 1 o'clock A. M., when the ticket office was not open, and was compelled to pay the additional five cents, it was held that the penalty was incurred. It was argued there that the case was not within the statute, because the ticket office was not required to be open at that hour; and upon that point it is said, in the opinion of the court: "It is insisted that because the plaintiff did not do what it was impossible for him to do, to-wit: buy a ticket before leaving *Utica*, he became liable to pay the extra fare. It seems to me the proposition has but to be stated to be rejected as utterly unsound. To compel a passenger to pay a penalty because the company had deprived him of the power to travel for the regular fare, would be so oppressive and unjust that it would require a positive provision of a legislative act to induce any tribunal to sanction it." Though that case arose under the statutes of *New York*, and might have been decided without touching upon the subject discussed in the passage quoted, yet the reasoning of the quotation is so forcible and so directly applicable to the point under consideration here that it may well be deemed an authority. And the fact that a State like *New York*, largely interested in commerce,

and whose known policy it is, in every proper way, to foster her great corporations engaged in the transportation of passengers, should, by statute, make their right to discriminate in fares depend upon their affording the passenger an opportunity to avail himself of the discrimination, is worth some consideration when the inquiry is whether such a discrimination can be upheld as reasonable without the corresponding obligation upon the carrier.

Opposed to the doctrine already announced, *Crocker* v. *New London, &c., Co.*, 24 Conn. 249, stands alone, so far as we know. The facts of that case were much like the one at bar, except that the ticket office was closed for the night, to be opened as usual thereafter. That fact was held as proof that the company had withdrawn its proposition to carry at ticket rates, and was therefore not bound to carry a passenger tendering to the conductor merely the price of a ticket. The law certainly deduces no such conclusion from the fact of closing a ticket office, as was reached in that case, to-wit: that the offer to carry at ticket rates was withdrawn. It is a conclusion of fact and not of law, and we think not at all a legitimate one. The Supreme Court of *Iowa*, in citing this case to another point, in *The State* v. *Chovin*, 7 Iowa 204, very properly disclaimed any purpose to be understood as concurring with the case upon the question now under examination. But the *Connecticut* case can have no application whatever to the inquiry as it arises in the present case, for here the evidence is clear that the offer was not withdrawn; that the agent was supplied with tickets and instructed to sell them, and did actually sell them on that occasion to other passengers for *Columbus*.

The court refused the following instruction, asked by the appellant:

"If you believe, from the evidence, that the plaintiff did not apply for, and was not refused a ticket, as alleged in his complaint, and that he refused to pay to the conductor of said train the regular and usual fare fixed by said com-

pany for a passage paid upon the cars, then the said conductor would have a right to eject the plaintiff from said cars, using no more force than was necessary for that purpose, even though between stations."

The question thus presented is, whether the expulsion, if otherwise rightful, might lawfully occur elsewhere than at a station. This question, in the case before us, does not depend upon a statute. Our general railroad law (1 G. & H. 516) does not apply to the appellant, and its charter is silent upon the subject. It is said in the briefs, which have evidently been prepared with great care, that the question is without direct authority. The passenger who refuses to pay fare is from that moment an intruder, and wrongfully on the train. He has no lawful right to be carried gratis to the next station. This is too plain to admit of debate. It follows that he may be expelled at once. There may be public considerations, such as the danger of collisions resulting from stopping trains between stations, or the peril to the traveling public consequent upon the increase of speed necessary to regain time thus lost, which justify the enactment of a law that the expulsion must occur at a station. These considerations, however, form no basis for a claim by a passenger to be carried gratuitously from one station to the next. The refusal to give this instruction must reverse the judgment.

Some questions as to the measure of damages are presented. It is argued that the utmost damages recoverable was the difference between the two rates of fare, fifteen cents, by paying which all other inconvenience and damage would have been avoided. But no man is bound to submit to even a trifling extortion. If he had a right to be carried for the sum tendered to the conductor, then the expulsion was purely wrongful, and for the consequences thereof the defendant was liable. The plaintiff was under no obligation to purchase even for a trifle the right which was already his own. This principle is elementary.

Could the jury properly give exemplary damages in a

case like this? It is argued that a corporation cannot be supposed to act willfully or maliciously, and that therefore the damages cannot go beyond the point of actual compensation. This reasoning is too metaphysical to be applied in testing the civil liability of a corporation. Practically, there is a human intelligence and volition which controls the affairs of a corporation, just like those of an individual, and which may act willfully, maliciously or recklessly, thus laying the basis for exemplary damages; and therefore whatever rule of damages would apply in a suit against a natural person, ought to apply in a suit against a corporation. Any discrimination in that regard would shock the public sense of impartial justice, and would be an unjustifiable innovation. The instructions governing subordinate employees and agents may be devised in such utter disregard of the rights of others that obedience to them will result in palpable oppression and gross wrong to individuals. Whether it was so here, was a question for the jury.

· The president of the railroad company being a witness, was asked by the appellant to state the rates of passenger fares on the road from *Indianapolis* to *Columbus* on the day on which the plaintiff was ejected. The evidence was refused by the court, except in mitigation of damages. We know of no ground upon which that ruling can be maintained, though in this case the error would not reverse the case. The answer, that the fare was two dollars and ten cents, but when tickets were purchased a discount of fifteen cents was made, was not different from the other evidence on the subject, as we have stated it. It was merely stating the same thing in different language. It is not the law, as argued by the appellee, that the rates of fare must have been fixed by the directors, and appear on the record of their proceedings. A corporation can do many things which need not appear in writing, and it may empower agents other than its directors to regulate all such matters as this.

The judgment is reversed, with costs, and the cause remanded for a new trial.

*T. A. Hendricks*, *O. B. Hord* and *A. W. Hendricks*, for appellant.

*F. T. Hord*, *W. Herod*, *W. W. Herod*, *R. Hill* and *J. M. Rogers*, for appellee.