Edwin DuLaurans,

*vs.*

The First Division of the St. Paul and Pacific Railroad
Company.

A railroad company has power to make reasonable regulations as to
the payment of fares by passengers upon its road, and in the exercise of
such power may make a discrimination between fares paid by passengers
in the cars, and those paid at the ticket office by purchasing tickets, and
it is immaterial whether the mode of this discrimination is by selling
tickets at a stated discount from the regular fare, or by charging a sum
beyond the regular fare if tickets are not procured; but in order to jus-
tify the expulsion of a passenger from the train for refusing to pay the
difference between the ticket fare and the regular car fare when a ticket
is not procured, the company must afford passengers a reasonable and
proper opportunity to avail themselves of the advantage, and avoid the
disadvantage of this discrimination.

The mere fact of the ticket office being closed, does not create a pre-
sumption of fact, or law, that a regulation of the company to sell tickets
at less than car fare is withdrawn.

What is a reasonable time for a railroad ticket office to be kept open,
in order to afford passengers an opportunity to procure tickets, is a ques-
tion to be determined by the jury, under the instruction of the court.

In the absence of qualifying circumstances, a passenger not having pro-
cured a ticket before entering the car is liable to pay the rate of car fare
established by the company, otherwise his right to a seat or passage on
the train is determined, and upon his refusal to pay such fare, the com-
pany may use the force reasonably necessary to eject him from the train.

When the practice of a railroad company is to admit passengers into
the cars without tickets or prepayment of fare, and collect the fare after
the starting of the train, a passenger who enters the cars in good faith,
with the intention of going from the city or depot at which he enters to
a certain other city or depot on the road, has a right to retain a place in

the cars so long as he complies with the reasonable regulations of the company.

When a passenger under such circumstances enters the cars in good faith, with such specific intention, but without a ticket, believing the fare from the place he entered the cars to the place of his destination to be a certain sum, and that sum is the actual fare between such points when a ticket is procured, and in like good faith tenders and delivers to the conductor collecting the fares, such sum as his full fare from the place he entered the cars to the place of his destination, it is the duty of the conductor if he does not intend to accept the same as the passenger's full fare, to refuse the tender by declining to receive it, or by returning it when advised of the purpose for which it was made. And if he receives and retains it with a knowledge of the purpose for which it was tendered by the passenger, it must be held to be an acceptance of the same as full payment of the passenger's fare to his place of destination.

When it is the custom of the company to permit passengers to enter the cars without tickets or prepayment of fare, and to collect the fare after the train is under way, if a passenger enters the train in *good faith* to go to a particular place on the road at which there is a regular station, but without a ticket, and in like *good faith* tenders and delivers to the conductor collecting the fares a certain sum as his full fare from the place he entered the cars to the place to which he intends to go, which sum is the regular ticket fare between such points, but the car fare is ten cents more, and the conductor after receiving the sum so tendered and delivered demands such additional ten cents, which the passenger refuses to pay, believing the sum tendered by him to be the full fare for his passage, and the conductor retaining the amount so tendered and delivered to him, ejects the passenger by force from the train at the first station beyond the place he entered the cars, and intermediate such place and the place to which he intended to go, the conductor cannot retain the sum so tendered, and delivered by the passenger to him, as the fare of such passenger from the place he entered the cars to the station at which he was expelled from the train, although the regular car fare between the latter points was the same in amount as that tendered by the passenger as his full fare to the point to which he intended to go. Under such circumstances the law does not imply a contract upon the part of the passenger to pay his fare at the regularly established rates, or at any rate for the distance traveled before his expulsion from the train.

In an action by a passenger against a rail road company for damages for unlawfully expelling him from the train, in the absence of proof of

DuLaurans v. First Division St. P. & P. R. R.

malice on the part of the defendant, the rule of damages as given by the court to the jury, which embraced only such damages as are in themselves compensatory, and are alleged in the complaint, or the necessary consequence of the act complained of, is correct.

Where, although the damages are large, it cannot be said they indicate any misunderstanding, by the jury, of the rule of compensation as given by the court, or that the jury were influenced by any improper feeling or motive, the verdict will not be set aside on appeal.

This action was commenced in the district court for Ramsey county, to recover damages for the expulsion of the plaintiff from defendant's cars at Lake Johanna crossing, between St. Paul and Minneapolis. The jury before whom the case was tried found a verdict for the plaintiff for $500. The defendant made a motion for a new trial which was denied, and from the order denying such motion it appeals to this court. A sufficient statement of the case will be found in the opinion of the court.

H. R. BIGELOW for Appellant.

GEO. L. OTIS for Respondent.

*By the Court*—McMILLAN, J.—This action is brought by the plaintiff against the defendant to recover damages on account of the expulsion of the plaintiff, while a passenger, from the cars of the defendant.

All the questions, except one, arise upon the charge of the court, and all are presented by the parties and considered in connection with the charge. The court charged the jury as follows: "If the jury shall find from the evidence that the plaintiff made known to the conductor that he was going to Minneapolis, and in good faith tendered to him fifty cents as the full fare to that point, and it was in fact the full fare

when paid in advance at the ticket office of the defendant, the conductor had no right to take the money except for the specific purpose tendered, to wit, as a full payment of such fare; and after taking and retaining the money so tendered, he had no right to eject the plaintiff from the car, and in such case the ejectment was wrongful, and the plaintiff would be entitled to recover."

Also that, " It was the duty of the conductor, if he intended to insist upon the payment by the plaintiff of the regular train fare, to return the money which the plaintiff paid him, and that he had no right to put the plaintiff off the train without first returning such money, if it was tendered by the plaintiff as the fare from St. Paul to Minneapolis."

And the court refused to charge (as requested by the defendant,) " That if the plaintiff persistently refused to pay the established fare from St. Paul to Minneapolis, that is to say, the sum of sixty cents when paid on the cars, and if the conductor for that reason expelled him from the cars at Lake Johanna crossing, using no unnecessary force for that purpose, then the plaintiff cannot recover, but the verdict must be for the defendant." To each of the charges so given, and to such refusal an exception was taken by the defendant. In the course of the trial the defendant's counsel asked the superintendent of the railroad, then a witness on the stand,

" What was the fare on 8th March last from St. Paul to Lake Johanna crossing?" Which question was objected to by plaintiff's counsel as immaterial. The counsel for the defendant here stated, in answer to a question by the court, that he did not expect to prove a contract between the plaintiff and the conductor to go only to such crossing, but did expect to prove that the regular fare in the cars from St. Paul to Johanna crossing was fifty cents. The court there-

upon sustained the plaintiff's objection, and to such ruling the defendant by its counsel duly excepted.

The defendant is a common carrier of passengers, and subject to the duties and entitled to the privileges and powers incident to such employment. *Com. vs. Powers and others,* 7 *Met.* 601.

At the time of the occurrence involved in this case, it was the practice of the company to admit passengers into the cars without tickets or prepayment of fare, and to collect the fare after the starting of the train, the conductor passing through the cars and calling upon the passengers for their tickets or fare.

The plaintiff, therefore, wishing to travel on the defendant's road had a right to enter the train, and take a seat, and having taken a seat in the car with the intention *in good faith* of going from St. Paul to Minneapolis, he had a right to retain his place so long as he complied with the reasonable regulations of the company. In the absence of qualifying circumstances the plaintiff not having procured a ticket before entering the car, would be liable to pay the rate of car fare established by the company, otherwise his right to a seat or passage in the train would be determined, and upon his refusal to pay such fare, the company would have a right to use such reasonable force as would be necessary to eject him from the train. But this is a right which the company might waive, and the plaintiff having tendered the conductor the sum of fifty cents, believing it to be the full fare to Minneapolis, and that sum being the actual fare when a ticket is procured at the office, it was the duty of the conductor, if he did not intend to accept it as full fare for the plaintiff, to refuse the tender by declining to receive it, or by immediately returning it when advised of the purpose for which it was made ; but having received and retained it with

a knowledge of the purpose for which it was tendered by the plaintiff, it must be held to be an acceptance of the same as full payment of the plaintiff's fare to Minneapolis.

It is claimed by the defendant that "the plaintiff by entering the defendant's cars as a passenger, assumed the duties of one, and became liable and must be held to pay his fare as upon an implied contract, and as one of these duties, for whatever distance he should remain a passenger according to the regular rates of the company;" that the regular fare from St. Paul to Lake Johanna crossing, as the defendant offered to show, was fifty cents, and the plaintiff having traveled that distance before the expulsion, was indebted to the company that sum under the implied contract, the conductor, therefore, was justified in retaining the amount paid by the plaintiff.

In this case it distinctly appears that the plaintiff entered the cars for the purpose of going to Minneapolis, and not elsewhere, and that he had no intention whatever of leaving the cars at Lake Johanna crossing, and did·not do so until forcibly expelled by the conductor from the train, and under many disadvantages returned to St. Paul. Whatever may be the law under a different state of facts, where as in this instance it appears positively that the plaintiff did not, in fact, intend to make such a contract as the defendant would imply, but did intend one of an entirely different character, and that the services performed in carrying the plaintiff to the crossing mentioned, were not only of no benefit to the plaintiff, but a positive disadvantage and inconvenience to him, it would do violence, it seems to us, to every sound principle of reasoning to say, that from such fact, the law implies a contract upon the part of the plaintiff to pay his fare at the regularly established rates, or at any rate for the distance traveled before his expulsion from the car.

We think the charges and rulings of the court were correct. The court further charged the jury at the request of the plaintiff that: "If the jury shall find from the evidence that fifty cents was the ordinary fare from St. Paul to Minneapolis, and the defendant by its regulation exacts the further sum of ten cents only in case of the omission to purchase a ticket in advance, then they are bound to keep their ticket office open a reasonable time in advance of the departure of trains to enable passengers to procure their tickets, and if on the occasion in question the ticket office was not open for such reasonable time as to enable the plaintiff to procure his ticket, they had no right to demand of him the extra ten cents, and the expulsion from the train was wrongful, and the plaintiff is entitled to recover." The court also charged as follows: "What is such reasonable time for the ticket office to be open in advance of the departure of the train is a question of fact for the jury under the instructions of the court."

And the court refused to charge as requested by the defendant, "that if the fare from St. Paul to Minneapolis as established by the defendant at the time of plaintiff's alleged grievance was, when paid on the cars, sixty cents, and if the plaintiff was on the train without a ticket, and persistently refused to pay such fare when requested so to do by the conductor, the defendant was not bound to carry him to Minneapolis, but had the right to remove him from the cars, using no more force than was necessary for that purpose," except with the proviso, "that plaintiff had reasonable opportunity to get a ticket; but did so instruct them with such proviso."

The company had a right to make any reasonable regulation as to the payment of fare by passengers upon its road, and in the exercise of its power could make a discrimina-

tion between fares paid by passengers in the cars, and those paid at the ticket office by purchasing tickets, and it is immaterial whether the mode of this discrimination is by selling tickets at a stated discount from the regular fare, or, if tickets are not procured, by charging a sum beyond the regular fare. But we think both reason and authority sustain the rule, that in order to justify the expulsion of a passenger from the train for refusing to pay the difference between the ticket fare and the regular car fare, when a ticket is not purchased, the company must afford passengers reasonable and proper opportunity to avail themselves of the advantage, and to avoid the disadvantage of this discrimination in fares which it publicly offers. *The Chicago B. and Q. R. R. Co. vs. Parks,* 18 *Ill.,* 464; *St. Louis A. & C. R. Co. vs Dalby,* 19 *Ill.,* 364; *The Jeffersonville R. Co. vs. Rogers,* 28 *Ind.,* 3; 1 *Redfield on Railways* (3d ed.), 104. The only case referred to, or which has come to our attention holding a different doctrine, is that of *Crooker vs. The New London, Willimantic and Palmer Railroad Company,* 24 *Conn.* 249. In that case it is held, among other things, that the regulation making a discrimination in fares was a mere proposal and could be withdrawn by the company at any time before being actually accepted by a passenger, and that the closing of the ticket office for the night before the plaintiff applied for a ticket, was a withdrawal of the offer to discriminate in favor of those purchasing tickets. The report of the case shows, that upon this point the members of the court taking part in the decision were equally divided in opinion, two judges dissenting. The case has been considered in several instances by other tribunals, and has failed to command the approval either of courts or commentators. 19 *Ills.* 364; 28 *Ind.* 5; 1 *Redfield on Railways,* 105. See also *The State vs. Cherin,* 7 *Iowa* 204.

It may be conceded that the offer to discriminate is in the first instance a mere proposal, and yet as a common carrier the right of the defendant to change or withdraw the proposition may not be unlimited. However that may be, the mere fact of the ticket office being closed does not create the presumption in law, or fact, of a withdrawal of the offer, 28 *Ind.* 5; and in the case at bar it is not pretended that there was in fact a withdrawal of the offer, for the evidence shows that the regulations existing at the time of this occurrence had existed for several years previous. If therefore the ticket office was not open for such reasonable time previous to the departure of the train as to enable the plaintiff to procure his ticket, the defendant could not demand of him more than the ticket fare, and his expulsion from the train was wrongful. What is a reasonable time for such purpose must depend on circumstances; what would be a reasonable time at a country station might not be sufficient in a large city; what would be reasonable in either depends on the number of passengers usually entering the train there, and other circumstances. What was a reasonable time in this instance therefore was properly submitted to the jury under the instructions of the court. *Cochran vs. Toher et al.*, 14 *Minn.* 391. It was further claimed by the defendant that there was no evidence what was a reasonable time for the office to be kept open, or whether the office was in fact open for such reasonable time. The testimony of Mr. Delano, the superintendent of the road, shows that the general instruction of the company to agents on the road is to have ticket offices open from ten to fifteen minutes before starting of trains; that they have a special ticket agent at St. Paul, and intend to have the office there open that much or more.

The plaintiff testifies that he went to the baggage master and had his baggage checked, that afterward, and about fif-

teen minutes before the train started, he went to the ticket office and found it closed, he then went and took his seat in the train.

Mr. Perkins, another passenger, states that he bought his ticket at the office about five minutes before the train started, that the office was then open. Whether there was other testimony or not does not appear, and while the testimony before us is rather slight, we think there was sufficient to justify the charge of the court.

There was no error in the instructions of the court, nor in its refusal to instruct as requested by the defendant; the exceptions under consideration therefore cannot be sustained.

The court at the plaintiff's request charged the jury that "In estimating the damages which the plaintiff is entitled to recover, the jury may take into account not only the loss of time but pain of body, pain of mind, and injury to the feelings of the plaintiff. They may award damages in their discretion as a compensation for the ill treatment to which the plaintiff was subjected in ejecting him from the cars," to which the defendant excepted. The defendant also requested the court to charge "that the plaintiff in any event can recover only the damages proved, and as he has failed to prove any special damages, but has shown himself at fault, and in the wrong in the matter, the defendant has been guilty, at most, of only technical wrong, and the verdict should be for only nominal damages." The court refused so to charge and the defendant excepted.

The rule of damages as laid down by the court in charging the jury as requested by the plaintiff, embraces only such as are in themselves compensatory damages, and such as are alleged in the complaint, or implied by law, and in this case, we think was entirely correct, and it follows the

DuLaurens v. First Division St. P. &. P. R. R.

refusal to instruct as requested by the defendant was not erronous.

In cases of this kind the jury are the proper judges of the amount of damages to be allowed, and unless there is something in the case showing that the jury in their determination were influenced by passion, prejudice or some improper motive, the court will not interfere. *City of St. Paul vs. Kuby*, 8 *Minn.* 171 ; *Chamberlain vs. Porter*, 9 *Ib.* 269 ; *Chapman vs. Dodd*, 10 *Ib.* 350. While the damages allowed in this case are large, we cannot say that they indicate any misunderstanding of the rule of compensation as given by the court, or that the jury were influenced by any improper feeling or motive.

The order appealed from is affirmed.

Berry, J.—It seems to me that the district court erred in excluding the question in regard to the fare to Lake Johanna crossing, and perhaps in some other matters. I must therefore dissent.