816     SUPREME COURT OF INDIANA.

The Baltimore, Pittsburgh and Chicago R. R. Co. v. McDonald.

## THE BALTIMORE, PITTSBURGH AND CHICAGO R. R. CO. v. McDONALD.

RAILROAD.—*Putting Passenger off Train for Non-Payment of Fare.—Statute Construed.*—Section 28 of the act under which most of the railroads of this State are organized, 1 R. S. 1876, p. 709, provides that. "If any passenger shall refuse to pay his fare or toll. the conductor of the train, and the servants of the corporation may put him out of the cars at any usual stopping place.'·

*Held,* that this section is a police regulation, for the purpose of protecting the public from the dangers of frequent and unnecessary stopping of trains between stations and the increase of speed necessary to regain time thus lost ; but, if a passenger refuse to pay his full fare on proper request by the conductor, he becomes an intruder, and it is the right and duty of such conductor to put him off the train, and it makes no difference that the conductor has previously received a part of the fare.

SAME.—*Disorderly Conduct.—Repayment of Fare.*—Under section 2, 1 R. S 1876, p. 710, a passenger who gets on a train intoxicated and advises other passengers not to pay their fare is guilty of disorderly conduct, and the conductor of the train may, after tendering him such "proportion of the fare he has paid, as the distance he then is from the place to which he has paid his fare bears to the whole distance for which he has paid his fare," remove him from the train, and, unless unnecessary force is used, the railroad company incurs no liability on account of such removal.

From the Noble Circuit Court.

*S. I. Anthony,* for appellant.

*F. Prickett,* for appellee.

SCOTT, J.—This suit was commenced by the appellee, in the Noble Circuit Court, to recover from the appellant damages for removing the appellee from the appellant's train of cars.

The complaint alleges that the appellee entered the appellant's cars, for the purpose of being carried from Milford Junction to Cromwell, a station on the appellant's railroad, and that the appellee paid his fare to the conductor of the train ; that, while on the train and in his seat, the conductor demanded of him to again pay his fare, and, on his refusal to pay again, the conductor stopped the train,

and without any lawful excuse, with great force and violence, and in the night-time and at a place other than a usual stopping place for said defendant, ejected and turned him out of the car, and refused to carry him further on the appellant's railroad.

There was an answer in three paragraphs, the general denial, and two special causes of defence.

The second paragraph of the answer alleges substantially the following facts: That the appellee entered the appellant's train of cars, as alleged in the complaint, and that the fare from Milford Junction to Cromwell was thirty-five cents; that appellee took out his money to pay the conductor, and that the conductor discovered that appellee was drunk; that appellee acted in such an annoying manner that the conductor, to avoid trouble, took of appellee twenty-five cents and passed on, and that soon, after the conductor had taken the twenty-five cents, the appellee commenced boasting that he had beat him, and telling and advising the passengers on the train that there was no use in paying, that he never paid, and that they could ride without paying fare; and that, while the appellee was so boasting and advising the passengers then on the train not to pay fare, the conductor demanded the balance of the fare from Milford Junction to Cromwell; that appellee refused to pay the balance of the fare; that the conductor then informed the appellee that, unless he paid the balance of the fare due, he would put him off the train; that the appellee refused to pay as requested, and that the conductor stopped the train and put the appellee off the train of cars on the station grounds of the appellant, near the appellant's station house at Syracuse, without using any unnecessary force; that there was a light burning at the station and a plain straight track to the station house near the place where the appellee was put off the train of cars.

The third paragraph avers the facts set out in the second paragraph, with the additional averment that the conductor, before removing the appellee from the cars, tendered back to appellee "the proportion of the fare he had paid that the defendant (appellee) would have been entitled to for transporting said plaintiff from said place where plaintiff was put off said cars to Cromwell."

There was a demurrer, for want of sufficient facts to constitute a defence, to each of these paragraphs. The demurrer was sustained and exceptions entered. There was a trial by a jury and verdict for the appellee for two hundred and fifty dollars. Motion for a new trial was overruled, and exception and judgment on the verdict. The evidence is not in the record, and the only questions before this court are the rulings of the circuit court on the demurrer to the second and third paragraphs of the answer.

As a general proposition of law, a passenger who fails or refuses to pay his fare is from that moment an intruder and wrongfully on the train. He has no lawful right to be carried from one station to another without the payment of the regular and usual fare, and may therefore be expelled at once. How far this general proposition is modified by the act under which most of the railroads in this State are organized, is to be determined by the interpretation which is to be placed upon section 28, 1 R. S. 1876, p. 709. We quote the section in full:

" If any passenger shall refuse to pay his fare or toll, the conductor of the train, and the servants of the corporation may put him out of the cars at any usual stopping place."

Is it meant by this provision of the statute, that a man may get on a train at one station, and refuse to pay any fare, and compel the railroad company to carry him to the next station before he can be put off? And that he can then get on the train, when it is moving out, and again

refuse to pay fare, and compel the company to carry him to the next station, and so on, to the end of the road? Such a construction and interpretation of the statute would, to say the least, make it very inconvenient for railroad corporations in many instances to collect any fare whatever. A better and more rational interpretation of the statute is, that it was intended by the Legislature to be a police regulation, for the purpose of protecting the public from the dangers of frequent and unnecessary stopping of trains between stations, or the peril to the travelling public consequent upon the increase of speed necessary to regain time thus lost. But, if a passenger refuse to pay the fare, he has no right to complain for being put off the train, for the reason that such refusal to pay fare on proper request makes him an intruder and wrong-doer from the beginning.

If the fare was thirty-five cents from Milford Junction to Cromwell, and the appellee, on proper request by the conductor, refused to pay this sum, the conductor had the right, and it was his duty, to put him off the train. And it makes no difference that the conductor had previously received a part of the fare; he had the right, and it was his duty also, to demand the remainder, and, if the appellee refused to pay, his right and duty were to put him off of the train. *The Toledo, etc., R. W. Co. v. Wright, post,* p. 586.

The third paragraph of the answer was good under the 2d section of the act of March 10th, 1875, 1 R. S. 1876, p. 710, and the demurrer thereto should have been overruled. A passenger who gets on a train drunk and intoxicated, and advises other passengers not to pay their fare, is guilty of disorderly conduct, and the conductor of the train may, after tendering him such " proportion of the fare he has paid, as the distance he then is from the place to which he has paid his fare bears to the whole distance for which he

has paid his fare," remove him from the train, and, if no more force is used in effecting such removal than is necessary, the railroad company incurs no liability on account of such removal.

The judgment is reversed, with costs, and with instructions to the circuit court to overrule the demurrer to the second and third paragraphs of the answer, and for further proceedings in accordance with this opinion.