Filed April 12, 1892.

---

No. 478.

## THE LAKE ERIE AND WESTERN RAILROAD COMPANY v. MAYS.

RAILROAD.—*Failure of Passenger to Procure Ticket.—Extra Charges for Such Failure.— When Legal.*—A railroad company may discriminate in its rates of fare in favor of those passengers who purchase tickets before entering the cars, but to justify such discrimination proper facilities should be afforded by the railroad company for the procurement of a ticket before the passenger goes upon the train, and if such facilities are not afforded the passenger he will be entitled to be carried at the ticket-rate, or he may pay under protest the excess demanded, and afterwards recover it back, but he is not obliged to do so.

SAME.—*Entering Car as a Passenger.— When Rightfully there.— When a Trespasser.*—Where a person enters a railroad car as a passenger, either with or without a ticket, he is rightfully there, but the instant he refuses to pay his full fare and comply with the reasonable regulations of the company he becomes a trespasser.

SAME.—*Taking Passage without a Ticket.—Tendering Regular Fare.—Acceptance by Conductor.—Contract to Carry for Same*—Where a person entered a railroad car without having first purchased a ticket, and having announced his destination, he tendered the regular ticket-fare, which the conductor accepted, and after passing on a few seats he returned and demanded the extra fare imposed by the rules of the company against passengers taking passage without ticket, the fact that the conductor accepted the regular fare and passed on a short distance did not amount to a contract to carry the passenger to his place of destination for that amount, and the passenger, in refusing to pay it, the railroad company

having provided reasonable facilities for procuring a ticket, became a trespasser, and could rightfully be expelled from the car.

From the Delaware Circuit Court.

*R. C. Bell, S. R. Morris, W. E. Hackedorn* and *J. W. Brady,* for appellant.

*M. E. Forkner,* for appellee.

BLACK, J.—The appellant was sued by the appellee for his expulsion from a passenger train upon the appellant's railroad.

A jury rendered a general verdict for the appellee for six hundred dollars, and returned answers to interrogatories.

The special findings in answer to interrogatories showed facts substantially as follows:

The appellee entered on a train of passenger cars on the appellant's road, at Muncie, August 6th, 1890, about 10 o'clock in the forenoon, without having, previous thereto, purchased a ticket.   At that time there was in force on the appellant's railroad a rule requiring its conductors to collect from all passengers who paid cash fares on the train, without the purchase of a ticket, ten cents extra fare more than was required in payment for the purchase of a ticket between the same points.   At and prior to the time when the appellee so entered the appellant's car, the appellant had in force and posted in all its passenger stations and passenger coaches a regulation, of which the following is a copy:

"NOTICE.

"On and after August 1st, 1890, passengers paying fare on train will be charged ten cents in excess of ticket rates. Receipts given by conductors will not be redeemable, and patrons are therefore earnestly requested to purchase tickets before entering the cars.          CHAS. F. DALY,

"H. C. PARKER,                Gen'l Passenger Agent.
     "Gen'l Traffic Manager.
               "Indianapolis."

At and prior to the time at which the appellee so entered

appellant's car, the appellant had a ticket office at Muncie, supplied with tickets, and an agent in attendance thereat, for the purpose of selling tickets to all persons who desired to pass over its road.    At the time the appellee entered the appellant's train he intended to go from Muncie to New Castle, a station on the appellant's line of road.    At the time the appellee so entered said train the regular fare and charge for one passenger over the appellant's road from Muncie to New Castle was the sum of fifty-five cents, when a ticket was purchased therefor before entering, and was the sum of sixty-five cents when paid in cash by the passenger on the train and without the previous purchase of a ticket.

At and prior to the time the appellee so entered appellant's car, the appellant had on hand and exposed to sale at its ticket office, at said station of Muncie, tickets between said stations of Muncie and New Castle, and said office was open in ample time on said date for the sale of such tickets to persons desiring the same between said stations.    At the date and time in question the appellee did not have ample time, after reaching the station at Muncie on the appellant's road, to have purchased a ticket at the ticket office before the departure of the train, had he so desired.    He could not have purchased of the appellant, at said ticket office at Muncie, before so entering the appellant's car, a ticket entitling him to passage over the appellant's road between said stations of Muncie and New Castle, for the reason that he did not have time to purchase a ticket and board the train.    For the same reason he could not have informed himself, if he had so desired, by proper inquiry at said ticket office at Muncie, as to the existence of said rule and requirement for the collection of ten cents more for passage, when paid for in cash on the train, than when a ticket was purchased before entering the train.

Upon entering the car the appellee took a seat near the rear part of the rear coach in said train.    The conductor in charge of said train, soon after leaving Muncie, approached

the appellee, at the place where he sat, for the purpose of receiving a ticket or collecting fare from the appellee. The appellee then handed to said conductor the sum of fifty-five cents. At the same time the appellee informed the conductor that he, the appellee, desired to go to New Castle. The conductor thereupon, or as soon as he had stepped one or two seats further to the rear and returned to where the appellee sat, informed the appellee that if he wished to go to New Castle he would have to pay ten cents more fare than he had paid. The appellee refused to pay said ten cents. The conductor informed the appellee that the rule which required him, the conductor, to collect ten cents extra, in all cases where fares were paid in cash and no ticket purchased, was an imperative rule. The appellee still refused to pay said extra ten cents. The conductor, at the time he so returned to where the appellee sat, informed him that he, the conductor, could not carry the appellee to New Castle for said sum of fifty-five cents. The conductor informed the appellee that unless he paid the full cash fare required by the conductor he would have to put the appellee off the train. The conductor informed the appellee at the time that fifty cents was the fare, when paid on the train, from Muncie to Mount Summit, a station on appellant's line of road located between Muncie and New Castle, distant about six miles from New Castle.

The conductor, at or immediately after the time when the appellee had handed the conductor said fifty-five cents, and he had informed the appellee that fifty cents was the fare, when paid on the train, from Muncie to Mount Summit, made out a receipt for a cash fare from Muncie to Mount Summit, and delivered, or offered to deliver it, together with five cents, to the appellee. Upon the arrival of appellant's train at Mount Summit, and while the train was standing still, the conductor approached the appellee and asked and demanded of him the payment of fare or the delivery of a ticket therefor, between Mount Summit and New

Castle. The appellee refused to deliver a ticket or pay any more than he had already paid. Thereupon the conductor informed the appellee that he would have to furnish a ticket or pay fare from Mount Summit to New Castle or leave the train. The appellee refused to furnish a ticket, pay fare or leave the train. The conductor then attempted to remove the appellee from the train, and the appellee braced himself in the seat, and resisted removal from the train with all his power. The appellee was a large, powerful man, weighing about one hundred and ninety pounds, about forty-four years of age, and in strong, vigorous health; and the conductor was compelled to call assistance in order to remove the appellee from the train. The appellee, at all times while on said train, resisted with all his might all attempts to remove him, and continued such resistance, even after the rear platform of the car had been reached, by grasping and holding upon the iron guards or brake wheel of the platform. The resistance offered by the appellee to his removal was so great that one of the seats in appellant's coach was broken thereby. The conductor and those who were called to his assistance did not use any more force than was necessary in order to remove the appellee from appellant's car. The appellee rendered necessary the use of such force, by his refusal to leave the car when requested and the resistance he offered to removal. The appellee notified the conductor that he would have to use force to remove the appellee from said car.

The appellee did not purchase or offer to give to said conductor any ticket entitling the appellee to pass over appellant's road from Muncie to New Castle. The appellee at all times refused to pay more than fifty-five cents for travelling as a passenger on appellant's road from Muncie to New Castle. He did not, at any time, intend to pay more than fifty-five cents on the train for travelling as a passenger from Muncie to New Castle over said road. It was, at all times, his intention to refuse to pay more than fifty-five cents for

travelling as a passenger over said road from Muncie to New Castle, and to refuse to leave said train unless compelled to do so by force. The regular fare between Muncie and Mount Summit at the time in question, when paid on the train, was fifty cents; and the appellee, on the occasion in question, rode from Muncie to Mount Summit, and he was removed from the appellant's train after it had reached the station of Mount Summit. When said train reached Mount Summit, the appellee notified the conductor in charge of the train that he, the appellee, intended to go to New Castle, and would not pay any more money therefor, and would not leave the train; and at all times he failed and refused to deliver to the conductor any ticket for the appellee's passage from Mount Summit to New Castle, and refused to pay cash fare for such passage. The conductor removed the appellee from the train in good faith, believing he had a right to so remove him, and was free from malice and wantonness in so removing him.

The jury answered that they did not include in their verdict any damages by way of punishment.

Two of the interrogatories and the answers thereto were as follows:

"No. 44. Did the conductor in charge of said train ever undertake or agree with the plaintiff to carry him as a passenger from Muncie to New Castle for less than sixty-five cents? Answer. By accepting and retaining part fare (fifty cents) he did.

"No. 45. Did the conductor in charge of said train ever intend to carry plaintiff as a passenger from Muncie to New Castle for fifty-five cents, or for less than sixty-five cents? Answer. Yes."

It appears that no excessive force was used in the expulsion of the appellee. If the judgment be sustained, it must be upon the ground that the expulsion was wrongful.

It is well settled in this State that a railroad company may discriminate in its rates of fare in favor of those passengers

who purchase tickets before entering the cars.    Such a regulation is reasonable.

To justify such discrimination proper facilities should be afforded by the railroad company for the procurement of a a ticket before the passenger goes upon the train.

If he has been unable to procure a ticket because of the fault of the railroad company in failing to afford him a proper opportunity to do so, he will be entitled to be carried at the ticket rate.    He may pay, under protest, the excess demanded and afterward recover it back, but he is not obliged to do so ; and if, insisting upon his right to be carried at the ticket rate, he be expelled, the company will be liable for its refusal to carry him.    *Jeffersonville R. R. Co.* v. *Rogers,* 28 Ind. 1 (38 Ind. 116) ; *Indianapolis, etc., R. W. Co.* v. *Rinard,* 46 Ind. 293 ; *St. Louis, etc., R. W. Co.* v. *Myrtle,* 51 Ind. 566 ; *Falkner* v. *Ohio, etc., R. W. Co.,* 55 Ind. 369 ; *Pittsburgh, etc., R. W. Co.* v. *Vandyne,* 57 Ind. 576 ; *Evansville, etc., R. R. Co.* v. *Gilmore,* 1 Ind. App. 468 ; *Chicago, etc., R. R. Co.* v. *Graham,* 3 Ind. App. 28.

In the case at bar it clearly appears that the appellant had such a discriminative regulation, and that no fault attached to the appellant whereby the appellee was deprived of the opportunity to procure a ticket.    All reasonable and proper facilities and opportunities were provided for the purchase of a ticket by the appellee, whose failure to procure one was attributable to his own fault or misfortune.

In entering the car and taking a seat therein he was not a trespasser, so long as he complied with the reasonable and proper requirements of the appellant.

At the time when the conductor approached the appellee there can be no doubt that, under the circumstances shown, the appellant had the right to require payment by the appellee of ten cents more than the ticket rate for passage, and upon his refusal to pay such excess, to expel him from the train.

It is insisted on behalf of the appellee that, under the facts

of the case, there was a contract between the appellee and the appellant, through its conductor, to carry the appellee from Muncie to New Castle for the ticket rate. It is contended that the appellee having tendered to the appellant's agent a certain sum of money in full payment of one continuous trip from Muncie to New Castle, and the appellant's agent having taken and received said sum, he took it burdened with the condition upon which it was tendered, and that so long as the appellant retained the money it was bound to perform the conditions upon which it was tendered, and had no right to eject the appellee for refusal to pay more fare; and that the appellant or its agent could not apply the money in a manner different from the conditions under which it was tendered, to do which, it is claimed, would be to create new contractual obligations without the assent and against the will of the appellee.

The special findings must be taken together. The interrogatories and answers numbered 44 and 45 above quoted must be considered in connection with all the facts shown. It does not appear that the conductor expressed any intention or agreement to carry the appellee to New Castle for fifty-five cents. Having received that sum from the appellee, who at the time of delivering it announced his destination to the conductor, the latter; after stepping one or two seats to the rear of the appellee, who sat in the rear part of the car, at once returned and informed the appellee of the regulation in question and demanded the payment of the extra fare. We can not conclude that the facts show a contract to carry the appellee to New Castle for the amount paid by him. The conductor seems to have explained the rule and to have refused to accept the fifty-five cents as full payment for the entire passage with reasonable and sufficient promptness under the exigencies of the situation. It sufficiently appears that the sum so delivered was paid by the appellee as and for the full fare, and that he did not consent to be carried to any other place than New Castle. It also suffi-

ciently appears that the appellant through its agent did not agree to carry him to that station.

We have a statutory provision relating to railroad companies, as follows, section 3921, R. S. 1281: "If any passenger shall refuse to pay his fare, or toll, the conductor of the train or the servants of the corporation may put him out of the cars at any usual stopping place."

In *Jeffersonville, etc., R. R. Co.* v. *Rogers*, 28 Ind. 1, which was an action, for the expulsion of a passenger, against a railroad company whose special charter was silent upon the subject, it was said : " The passenger who refuses to pay fare is from that moment an intruder, and wrongfully on the train. He has no lawful right to be carried gratis to the next station. This is too plain to admit of debate. It follows that he may be expelled at once. There may be public considerations, such as the dangers of collisions resulting from stopping trains between stations, or the peril to the travelling public consequent upon the increase of speed necessary to regain time thus lost, which justify the enactment of a law that the expulsion must occur at a station. These considerations, however, form no basis for a claim by a passenger to be carried gratuitously from one station to the next."

In the same case, in 38 Ind. 116 (125), it was said : " If the expulsion had been rightful in itself, it might, perhaps, have been legally effected at any time of day or night, and at any place, without reference to stations or the convenience and comfort of the party expelled."

In *Columbus, etc., R. W. Co.* v. *Powell*, 40 Ind. 37, it was held that where one by mistake gets upon a passenger train other than the one he intended to take passage upon, the relation of passenger and carrier exists between him and the company whose train he is on, and it was said that in such a case the railroad company might have charged such a person for the distance which it carried him, and would not be

bound to stop to allow him to get off except at a regular station or stopping place.

In *Pittsburgh, etc., R. W. Co.* v. *Nuzum*, 50 Ind. 141, it was said : "A railroad company is not bound to stop and allow a passenger to get off except at a regular station or stopping place."

The *Baltimore, etc., R. R. Co.* v. *McDonald*, 68 Ind. 316, was an action for damages for expulsion from a train, the complaint alleging that the plaintiff paid his fare to the conductor, who demanded of the plaintiff to again pay his fare, etc.  In a paragraph of answer, which was held by the Supreme Court to be sufficient, it was alleged that the conductor discovered that the plaintiff was drunk, and to avoid trouble took of the plaintiff twenty-five cents and passed on, the fare being thirty-five cents ; that the plaintiff boasted that he had beaten the conductor, and advised passengers that there was no use in paying, etc.; that the conductor demanded the balance of the fare and upon the plaintiff's refusal to pay it, put him off the train.

It was said in the court's opinion, in commenting upon this answer :  "As a general proposition of law, a passenger who fails or refuses to pay his fare is from that moment an intruder, and wrongfully on the train.  He has no lawful right to be carried from one station to another without payment of the regular and usual fare, and may therefore be expelled at once."  Referring to section 3921, R. S. 1881, above quoted, it was said that it was intended by the Legislature to be a police regulation for the purpose of protecting the public from the dangers of frequent and unnecessary stopping of trains between stations, or the peril to the travelling public consequent upon the increase of speed necessary to regain time thus lost ; but that if a passenger refuse to pay the fare, he has no right to complain for being put off the train, for the reason that such refusal to pay fare on proper request makes him an intruder and wrong-doer from the beginning.  It was further said :

" If the fare was thirty-five cents from Milford Junction to Cromwell, and the appellee, on proper request by the conductor, refused to pay this sum, the conductor had the right, and it was his duty, to put him off the train. And it makes no difference that the conductor had previously received a part of the fare; he had the right, and it was his duty, also, to demand the remainder, and if the appellee refused to pay, his right and duty were to put him off the train."

In *Toledo, etc., R. R. Co.* v. *Wright*, 68 Ind. 586, the statutory provision above quoted was held to be permissive, and not prohibitory in its terms. It was said that the railroad company had the legal right to exact from the plaintiff a larger sum when paid on the cars than it would have charged him for a ticket; and that when he refused to pay the fare demanded, the conductor had the right, and it was his duty as a faithful servant, to put the plaintiff off the train, " at any time and at any place on the line of the road, without reference to stations, and without actual danger to his life or person. * * * Certainly he had no right to be carried by the appellant, without charge, to the next station."

If the passenger refuse, when properly requested, to pay his full fare, the conductor or servants of the railroad company " may put him out of the cars at any usual stopping place."

He has no right to complain of their failure to put him off at the first usual stopping place reached after his refusal.

The appellee's expressed intention of travelling to New Castle, and the want of any intention or consent on his part to be carried to any station other than New Castle, did not entitle him to be carried to that place without payment of the full fare, in the absence of an agreement between him and the conductor for his passage upon the amount paid, if the conductor had power as against the appellant to make such an agreement in the face of the regulation to the contrary made known to the appellee, as to which we need not decide in this case.

If the retention by the conductor of a sufficient portion of the amount given him by the appellee to pay his fare to Mount Summit was unauthorized, it is the failure to repay that amount, and not the expulsion from the train of which the appellee has a right to complain.   The retention of this money did not give the appellee a right to ride to New Castle.   He could acquire such right, under the circumstances, only by paying his fare to New Castle.   See *McCarthy* v. *Chicago, etc., R. R. Co.*, 41 Iowa, 432 ; *Hoffbauer* v. *D. and N. W. R. R. Co.*, 52 Iowa, 342.

This is not an action to recover the amount retained by the conductor, and we need not decide whether such an action would lie, when the passenger has been rightfully expelled.   This action is for the appellee's alleged wrongful expulsion alone.

The judgment is reversed, and the cause is remanded, with instructions to sustain the appellant's motion for judgment on the special findings in answer to interrogatories, and to render judgment accordingly.

Filed April 13, 1892.