The Chicago, St. Louis and Pittsburgh Railroad Company v. Graham.

Filed Nov. 11, 1891.

---

No. 325.

## The Chicago, St. Louis and Pittsburgh Railroad Company v. Graham.

RAILROADS.—*Rules and Regulations for Passengers.—Opportunity to Comply with Rules.*—A carrier of passengers may adopt reasonable rules and regulations in the despatch of its business, and may insist upon a compliance therewith upon the part of all who seek transportation; but it is bound to afford reasonable facilities to enable a passenger to comply with its rules and regulations.

SAME.—*Rates of Fare Paid on Train.—Purchase of Ticket Before Boarding Train.*—A carrier may charge a passenger who pays his fare on the train a higher rate of fare than one who buys a ticket before entering the train, if it extends ample facilities to all persons who desire to purchase tickets.

SAME.—*Excursion Train at Reduced Rates.—Rule.*—A carrier may run an excursion train at reduced rates, and require passengers to purchase tickets as a condition upon which they obtain the benefit of such rates, and it may enforce such rule against all who by their own fault fail to comply with it.

SAME.—*Passenger.—Inability to Purchase Excursion Ticket.—Right to Pay Fare on Train.*—If a passenger, through the fault of the carrier, is unable to procure a ticket, in compliance with the carrier's rule requiring all who

The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Graham.

desire to secure excursion rates to purchase a ticket before entering the train, he may take passage on the train and upon a tender of the excursion ticket-fare he will be entitled to all of the rights and privileges that a ticket would afford him.

SAME.—*Advertising Excursion from Station Having no Ticket-Office.*—A carrier that advertises to carry passengers from a certain station at excursion rates on a special train when it has no ticket-office nor agent to sell excursion tickets at such station, can not insist that all who board the train shall first purchase excursion tickets; and if it ejects a passenger who tenders on the train the excursion rate, it will be liable in tort for the damages inflicted.

SAME.—*Duty of Passenger to Pay Excess Over Excursion Rate.*—A passenger is under no obligation to pay the full or excessive rate of fare demanded by the conductor on a train in order to prevent his ejectment from such train and thus lessen his damages.

SAME.—*Right of Action Does Not Rest in Contract.*—A cause of action for ejecting a passenger from a train after tender and acceptance of the excursion rate is not for a breach of the contract to carry, but for the violation of a personal right assured by law.

SAME.—*Travelling on Sunday.*—*Ejecting Passenger.*—A passenger travelling on a Sunday excursion train, who is wrongfully ejected from the train, may recover the damages he sustains; the fact of travelling on that day not barring his right of recovery.

From the Henry Circuit Court.

*J. H. Mellett, C. H. Burchenal* and *J. L. Rupe,* for appellant.

*C. S. Hernley,* for appellee.

CRUMPACKER, J.—Graham sued the railroad company for damages for unlawfully ejecting him from one of its passenger trains.

The complaint alleges that the company ran an excursion train from the city of Indianapolis to the city of Richmond and return on the 12th day of May, 1889, and prior thereto it advertised such excursion train along the line of its road by "posters," giving the time of its arrival and departure at the various stations, and stating the fare for the round trip; that said company so advertised said train to leave the station at the village of Ogden at — o'clock A. M. on said 12th day of May, and that the fare for the round trip from

said station would be seventy cents; that plaintiff desired to go on said excursion, and went to the station at Ogden in proper time to take passage on said train, and before the arrival of the train he undertook to procure a round-trip excursion ticket, but could not, for the reason that the company had negligently failed to have any tickets for sale at said station; that said train stopped at said station for the purpose of receiving passengers, and plaintiff, being unable to purchase a ticket, and having the money to pay his fare, embarked upon said train, supposing he could buy a ticket from the conductor; that thereafter the conductor in charge of said train came to plaintiff to collect his fare, and he paid said conductor the sum of ninety-five cents, and "demanded that he be carried from said station, Ogden, to the city of Richmond and return; that said defendant accepted said sum of money for such fare and gave the plaintiff a receipt therefor;" that upon the return of said train in the evening of said day the plaintiff took passage thereon for Ogden, and the same conductor was in charge of the train to whom plaintiff paid his fare on the trip to Richmond; that while said train was proceeding on its journey, and was about a mile west of the city of Richmond, said conductor came to the plaintiff and demanded his fare to Ogden, whereupon plaintiff exhibited to him the receipt for the fare paid as aforesaid, and refused to pay any more, and the conductor thereupon stopped said train and unlawfully expelled plaintiff therefrom; that it was dark and raining, and plaintiff was unacquainted in that vicinity, and was compelled to and did walk to his home, a distance of thirty-five miles, whereby he was damaged, etc.

A demurrer filed to the complaint was overruled, and exceptions saved.

The defendant answered in three paragraphs. The third paragraph was adjudged insufficient upon demurrer.

The plaintiff replied by general denial, and the issues thus formed were tried by a jury, who returned a special verdict.

The Chicago, St. Louis and Pittsburgh Railroad Company *v.* Graham.

The defendant moved, successively, for a *venire de novo* and for a new trial; but both motions were overruled, and the plaintiff was awarded judgment upon the verdict.

The first question for consideration arises upon the ruling of the court upon the demurrer to the complaint.

It is claimed, on behalf of the company, that the theory of the complaint is the breach of a special contract between the appellee and the conductor, by the terms of which the former was to be carried to Richmond and return for ninety-five cents, and it is insisted that the facts alleged do not establish such a contract. We do not so understand the complaint. It proceeds upon the theory that the company undertook to run a special train at special rates, and that all who complied with the company's regulations were entitled to the benefit of such special rates; and that the appellee complied with such regulations as far as it was in his power to do, and paid the stated fare, and more, and, while in the enjoyment of a privilege he had so purchased and paid for, he was unlawfully expelled from the train. It does not appear by the complaint that it was necessary to have a ticket to obtain the benefit of the excursion privileges; but, conceding that such was the requirement, the complaint is sufficient.

It is universally admitted that a carrier of passengers may adopt reasonable rules and regulations in the despatch of its business, and may rightfully insist upon a compliance therewith upon the part of all who seek transportation; but the carrier is bound to afford reasonable facilities to enable a compliance with its rules and regulations. A railroad company may charge a higher rate of fare to one who pays the conductor, or manager of a train, than to one who buys a ticket, provided it extends ample facilities to all travellers who desire to procure tickets. Such company may run an excursion train at reduced rates, and require passengers to purchase tickets as a condition upon which they shall obtain the

benefit of such rates; and it may enforce this rule against all who by their own fault fail to comply with it.

If, however, a passenger is unable to procure a ticket through the fault of the company, he may take passage on such train, and upon a tender of the ticket-fare will be entitled to all of the rights and privileges that a ticket would afford him. Upon a tender of fare under such circumstances, the relation of carrier and passenger would obtain, and the company would have no right to eject such passenger, or deny him passage, because he is without a ticket. This principle is firmly settled by the decisions of the Supreme Court of this State. *Jeffersonville R. R. Co.* v. *Rogers*, 28 Ind. 1; *St. Louis, etc., R. W. Co.* v. *Myrtle*, 51 Ind. 566; *Toledo, etc., R. W. Co.* v. *McDonough*, 53 Ind. 289; *Lake Erie, etc., R. W. Co.* v. *Fix*, 88 Ind. 381; *Godfrey* v. *Ohio, etc., R. W. Co.*, 116 Ind. 30; *Pennsylvania Co.* v. *Bray*, 125 Ind. 229.

The fact that the trespass occurred on Sunday does not affect the appellee's right to recover.

While the right to ride upon the train had its foundation in the implied agreement upon the part of the company to carry the appellee, created by the payment of fare, the action is not for the breach of such contract, but for the violation of a personal right assured by the law. As between carrier and passenger the law imposes a duty upon the carrier independent, in a sense, of their contractual relations, although incidental thereto, but which has its basis in the regard the law has for human life, and personal security. *Louisville, etc., R. W. Co.* v. *Frawley*, 110 Ind. 18; *Carroll* v. *Staten Island R. R. Co.*, 58 N. Y. 126.

It is further contended that it was the appellee's duty to pay the return fare demanded by the conductor out of consideration for the rights of other travellers, and that his only right of action would be to recover from the company the excess charged. If he had paid the extra demand, and been carried to his destination, perhaps he could only recover the excess, unless some element of special damages entered into

the occurrence; but he was not bound to do this. This identical question was before the court in *Jeffersonville R. R. Co.* v. *Rogers, supra,* and in deciding it the court said: "The plaintiff was under no obligation to purchase, even for a trifle, the right which was already his own."

The complaint is sufficient.

The third paragraph of answer pleads a rule of the company requiring passengers to purchase tickets in order to obtain the benefit of the excursion rates, and alleges that the company had ceased to keep a ticket office at Ogden on account of a lack of business to justify it, which fact was generally known in that vicinity; and that appellee boarded the train without a ticket, and the conductor demanded of him the regular cash fare, which he refused to pay, and was on that account required to leave the train; that no unnecessary force was employed to expel him, nor was he subjected to any indignity.

There was no error in rejecting this answer. It was immaterial whether the company maintained a regular ticket office at Ogden or not. When it invited the public to take passage upon the special train at that point, and agreed to carry for a special rate, passengers had a right to expect that reasonable accommodations would be furnished there, or on the train, to obtain tickets.

As has been suggested, it is only where he is without a ticket through his own fault that a cash passenger may be discriminated against.

It is argued that the special verdict is defective, in that it does not find the terms of the special contract between the appellee and the conductor, nor set out the substance of the cash-fare receipt, nor find what the company's regulations were respecting the purchase of tickets for the excursion.

None of these questions were material. The action is not founded upon any special contract with the conductor; and the receipt was only evidence of the payment of fare, and

could have no possible effect upon the rights of the parties to any further extent.

It was immaterial, under the theory of the case, what the company's rule were, with reference to requiring passengers to purchase tickets.

The fact that appellee ·paid more than the advertised fare should subject him to no disadvantage.

Every essential issue was covered by the special verdict, and the appellee was entitled to judgment thereon.

There is no material error in the record.

The judgment is affirmed.

Filed Nov. 11, 1891.