## JOHNSON *v.* GEORGIA RAILROAD & BANKING CO.

The mere fact that a railroad company has been accustomed on a given day·
  in each week to sell round-trip tickets between stations along its line of
  road, at a rate of fare below the maximum rate fixed by law, does
  not entitle a person who fails to procure such a ticket, by reason of the fact
  that the agent is absent and the ticket-office is closed, to be carried the·
  round trip between such stations upon a tender to the conductor of the
  fare which the company has been in the past accustomed to charge.   The
  closing of the ticket-office is prima facie evidence that the company in-·
  tended to abandon the custom, which it had a right to do; and in the ab-··

sence of facts showing that such was not its intention, such custom can not be relied on to constitute a contract of carriage at the reduced rate which the company was formerly in the habit of charging.

Argued June 8, — Decided July 26, 1899.

Action for damages.　Before Judge Reese.　Oglethorpe superior court.· October term, 1898.

*Lumpkin & Burnett,* for plaintiff.
*Joseph B. & Bryan Cumming* and *M. P. Reese,* for defendant.

Cobb, J.　Johnson brought suit against the Georgia Railroad and Banking Company, alleging in his petition, in substance, as follows:　On October 24, 1897, the same being Sunday, petitioner went to the depot of the defendant at Dunlap, about 2 o'clock in the afternoon, for the purpose of purchasing a round-trip ticket from that station to Crawford, another station on defendant's road.　Dunlap was a regular ticket-station, "and it was the custom of said defendant company to issue round-trip tickets on Sundays from said station of Dunlap to Crawford for the sum of twenty-four cents."　Petitioner, knowing these facts, went to Dunlap about one hour and a half before the time for the train to arrive upon which he desired to take passage, and remained there all the while and sought to procure a ticket, but the office was not open, nor was there any person there to sell tickets, and hence petitioner was unable to procure a ticket.　When the train arrived about 4 o'clock in the afternoon he took passage on the same, and when the conductor demanded his fare he stated to the conductor that he desired to go to Crawford and return; that he had endeavored to purchase a ticket at Dunlap, but that the office was closed and there was no one there from whom he could purchase a ticket; that he was willing to pay the regular Sunday round-trip rate, viz. 24 cents; and this sum he offered to pay the conductor after having stated the facts above set forth.　The conductor refused to accept this sum, and demanded of petitioner the regular train rates, to wit, three cents a mile.　Petitioner was unable and declined to pay the rate demanded, and the conductor and other agents and employees of the defendant illegally and without authority of law ejected him from the train.

A number of petitioner's acquaintances were aboard the train, and he was disgraced and degraded in their estimation and his feelings were wounded.   Petitioner was on the train as a passenger as a matter of right, and was deporting himself in a quiet and orderly manner, and was without fault on his part.   At the trial term the defendant moved orally to dismiss the plaintiff's petition, on the ground that it set forth no cause of action. The court sustained the motion and dismissed the petition, and the plaintiff excepted.

The maximum rate at which the defendant was, under the regulations of the railroad commission of this State, authorized to sell tickets, was three cents per mile, and any person presenting himself as a passenger upon one of its trains without a ticket could be required to pay four cents per mile, unless the company either had no ticket-office at the place where it received such passenger, or, having a ticket-office, had failed to keep the same open immediately before the arrival of the train the time required by the regulations of the railroad commission, and thereby the passenger was prevented from procuring a ticket.   The plaintiff in this case, however, is not one who. presents himself upon the train as a passenger and demands to be carried upon paying the ticket rate of fare because he has been prevented by the act of the company from obtaining a ticket at the rate of three cents per mile.   If that had been the case, his petition would have set forth a cause of action, as his expulsion would have been unauthorized.   He does not allege a refusal of the company to carry him at the usual rate of fare charged by the company for tickets.   On the contrary his petition shows that no more than this rate was demanded of him.   But he complains that the company refused to carry him for a round trip between two stations at a reduced rate, and that the conductor, to whom he tendered a sum equal to that at which he alleges the company had on former Sundays sold round-trip tickets between the stations, refused to enter into an arrangement with him by which he could be carried the round trip for the sum tendered.  He does not allege that there was any rule or regulation of the company, which had been promulgated, declaring that it would sell round-trip tickets at the

rate of fare which he claimed they had been accustomed to charge. It is not alleged that any notice was published in any way stating that round-trip tickets would be sold either on the day on which the plaintiff boarded the train or on any day. The allegation is, that "it was the custom of said defendant company to issue round-trip tickets on Sundays" from Dunlap to Crawford and return. This is in effect an allegation that on Sundays in the past, for how long it does not appear, the defendant had seen proper to sell persons at a reduced rate round-trip tickets between these stations. Railroad companies in this State are required by law to sell tickets to persons desiring to become passengers for three cents per mile, and it is made their duty to provide a place at which these tickets can be procured. If they fail in this, such persons may nevertheless board the train and insist upon being carried upon tendering the amount which they would be required to pay for the ticket. This is all that the railroad companies are compelled to do. They may, if they see proper, carry a passenger for a less sum than this rate, but they are not compelled to do so, and any offer on their part to make a contract of carriage for a less sum is entirely voluntary. Being under no legal obligation to make the offer, when made it may be withdrawn at any time that the company sees proper. The effect of the allegation in the petition is, that the defendant had been accustomed in the past to make offers of this character on Sundays, and that these offers had been accepted; but how was the offer made? It clearly appears from the petition that the company offered to issue to persons who applied at the ticket-office round-trip tickets upon payment of a reduced rate, so that the custom alleged was not a custom of carrying passengers at a reduced rate, but of supplying prospective passengers with tickets when they made application for the same at the ticket-office of the company. When the plaintiff repaired to the station of Dunlap on the day in question, he had knowledge, as is alleged, that the ticket-agent at that office had been on duty on Sundays and had for a reduced rate of fare sold round-trip tickets between the stations named. When he found the ticket-office closed and no agent of the company present, this was notice to him that on this day

the offer which the company had been accustomed to make in the past was withdrawn, and therefore he had no right to enter the train unless he intended to comply with the law requiring him to pay the rate of fare fixed by the railroad commission. He had no contract with the company to carry him a round trip between the stations at a lower rate. He simply shows that in the past the company had been accustomed to make contracts of this character. Nothing is alleged in the petition which would require the company to continue the practice of issuing these round-trip tickets if it desired to abandon the custom, although the abandonment might be for one day only and between the two stations named only. The selling of the round-trip ticket was purely voluntary. The company was under no duty to the public or to any individual to sell such tickets. No publication or notice that such tickets would be sold was ever given, and no such ticket was ever issued except by a ticket-agent. The plaintiff, therefore, according to his allegations, must have known that the custom upon which he relied as his authority for boarding the train did not justify him in taking this step without procuring a ticket, and that when the company closed its ticket-office it withdrew the offer to sell at the reduced rate.

In Crocker *v.* Railroad Company, 24 Conn. 249, it appeared that the company established and gave public notice of a regulation that the fare on their cars between two named stations would be fifty cents, if a ticket was procured by the passenger before entering the cars; otherwise the fare would be fifty-five cents. A person without a ticket took a seat in one of the company's cars at one of the stations named, to go to the other station, and when called upon by the conductor, offered to pay fifty cents for his passage and refused to pay any more. Whereupon the conductor ejected him from the train. Upon the trial of an action brought by him against the company he claimed to have proved that he went to the office where tickets were usually sold, at a reasonable time before the train arrived, to procure a ticket, and that the office was closed and there was no one from whom a ticket could be procured. It was held that the defendant was under no legal obligation to furnish

tickets to carry passengers between the stations named for less than fifty-five cents each; that the regulation of the defendant was not a contract creating a legal duty, but a mere proposal, which might be withdrawn at pleasure; that such proposal was withdrawn by the closing of the ticket-office and the retirement of the agent therefrom. Sandford, J., in the opinion says: "But the plaintiff contends, that the defendants, having published this regulation, were bound to furnish tickets, and, for that purpose, to keep an office and an agent in attendance at all reasonable times. It is obvious that the law, independent of any special contract, imposed no such duties upon the defendants. . . That the meaning and import of the regulation were what the plaintiff claims, may be conceded; but did it, like a valid contract, impose upon the defendants a legal obligation, from which they could not recede at pleasure? Was the rule thus promulgated, and thus construed, a contract? I think it was in the nature of a mercantile advertisement, rather than a contract; proffered on one side, to be closed by a mere acceptance on the other. . . But suppose that published rule was a proffered contract, which might be closed by a mere acceptance; like all other proposals, until accepted, it might be withdrawn at pleasure. It has already been remarked, that the defendants' obligation to furnish a ticket, and the right of the plaintiff to obtain one, on request, if such right and obligation existed, must have had their foundation entirely in the supposed special undertaking which the published regulation of the defendants imported; and, in this connection, it may be added that, independent of any special contract, the whole duty of the defendants toward the plaintiff was to carry him for a reasonable compensation in money. The defendants were ready to carry him, but he refused to pay them their reasonable compensation of fifty-five cents, and insisted upon holding them to furnish a ticket, or its equivalent in a passage, at the price of a ticket. His right to retain his seat, therefore, depended not on the common-law obligation of the carriers, but upon the assumed special undertaking of the defendants to furnish and carry for a ticket. . . His claim is, that having, on his part, done everything required by the defendants' regulation, to en-

title himself to a ticket, and having failed to obtain one, through the fault of the defendants, he has, as against them, acquired the same rights as if his efforts to obtain such ticket had been successful. . . The published regulation being a mere proposal, until accepted, imposed upon the defendants no legal duty; the minds of the parties not having met, no contract be-between them had been made. Before the plaintiff's appearance, the agent had closed the office and retired, and so the proposal was withdrawn, and withdrawn before acceptance. An intention or a readiness to accept an offer is a very different thing from an actual acceptance. . . Closing the office was, for the time, at any rate, a most effective withdrawal of the proposal to furnish tickets, and necessarily communicated notice of such withdrawal to the plaintiff." The decision was rendered by a majority of the court, two Justices dissenting. The ruling made by the majority was followed by the Supreme Court of New York in the case of Bordeaux *v.* Railroad Company, 8 Hun, 579, a decision in which all of the Justices concurred, and the reasoning of Judge Sandford was approved. It seems that on the question as to whether a railroad company is under a legal obligation to furnish tickets for a continuous passage, when it has established a regulation providing that the train rate of fare shall be higher than the ticket rate, the two decisions above referred to stand alone in this country. The conclusion reached in both of these cases has been adversely criticised by both courts and commentators. See notes to Phettiplace *v.* Railroad Co., 20 L. R. A. 483, 484; 1 Fetter, Carriers, § 269, and cases cited; Railroad Company *v.* Rogers, 28 Ind. 1, 5; Railroad Company *v.* Dalby, 19 Ill. 353, 364; Swan *v.* Railroad Company, 132 Mass. 116, 117; DuLaurans *v.* Railroad Company, 15 Minn. 49, 56.

An examination of these cases and comments, however, will show that the criticism arises at this point: that when a rail-road company sees proper to make a regulation that a higher rate of fare will be charged persons without tickets than those who have tickets, while such a regulation is reasonable, the further rule requiring conductors to eject from the train persons refusing to pay more than the ticket rate, when the omis-

sion to procure the ticket was due to the failure of the company to afford an opportunity to such person to obtain a ticket, is unreasonable. It does seem unreasonable to require of a passenger a higher rate of fare when he has done everything in his power to comply with the regulation of the company, and his failure to obtain the ticket was due to no fault whatever on his part. . This is undoubtedly true in all cases where the ticket issued would entitle the passenger to a continuous passage, and where the payment of the fare to the conductor on the train would as perfectly accomplish the result to be desired as the delivering of a ticket to the conductor. There seems, however, to be a proper distinction to be drawn between those cases where a single-passage ticket is required and cases where the company voluntarily agrees, on certain conditions, to sell round-trip tickets at a rate of fare lower than that usually charged for the continuous passage each way. In the sale of round-trip tickets at reduced rates the company is doing two things which it is under no legal obligation to do — two things which are purely voluntary on its part; first, it will thus give to the person purchasing such a ticket a token which will enable him to ride as a passenger upon its train both ways between the stations named, and, second, it is doing this for a sum less than that for which the purchaser could legally require it to carry him. Such a contract at such a rate is one that is unusual, and for that reason the duties and liabilities of the company arising out of the proposal to enter into such a contract are not the same as those which would arise where the proposal is to do something which is usually and ordinarily done by common carriers. The failure to secure a single-trip ticket entails little trouble upon the agents of the company and causes no confusion in the transaction of the business of the company. The passenger can pay the conductor the ticket rate of fare, who can then carry him to his destination, or at least to the point where the conductor turns the train over to another conductor. Such an arrangement is so simple that it does not seem other than reasonable to require the company to follow this plan when it has not afforded the passenger an opportunity to purchase a ticket. But how is it

in regard to round-trip tickets? Mere payment to the conductor on the outgoing train will not supply the place of such a ticket. The passenger needs some evidence that he has paid the fare, in order to satisfy the conductor on the returning train that he has settled with the conductor on the outgoing train. The confusion incident to a system which would permit a passenger to enter a train without a ticket and make an arrangement with a conductor for a round trip is so apparent that it will not be presumed that it was the intention of the company to establish such a practice; and a rule requiring as a condition precedent to be performed before the passenger is carried that he shall have purchased a ticket can not in such cases be said to be unreasonable. Conceding that the conclusion reached in the Crocker and Bordeaux cases was not correct as applied to a single-trip ticket, the reasoning of the judge is certainly sound when the same is applied to a mere custom of the company to sell round-trip tickets between stations on its road at a reduced rate. In the present case the ticket which the railroad company had been accustomed to sell was not the usual single-passage ticket fixed by a published rule or notice of the company, but a *special* round-trip ticket sold only on certain days and at a lower rate than the usual tickets were sold. This, we think, was a mere voluntary offer to do something which the defendant was under no obligation to do, and one which might be abandoned at any time; and the closing of the ticket-office was prima facie evidence of such abandonment. It may be that even if the ticket-office had been open and tickets of the character used in the past had been on hand, a mere statement by the agent that such tickets would not be sold on that day would relieve the company from the obligation of issuing such a ticket; but it is not necessary in the present case to decide this, as the allegation is that there was no agent present and the office was closed, which is prima facie evidence that the company intended to abandon, for a time at least, the voluntary undertaking which it had assumed in the past to furnish persons who applied to the ticket-office with round-trip tickets at a reduced rate. Whether or not, if the railroad company had promulgated a rule or published a notice, stating that

tickets at a reduced rate would be sold on certain days, the closing of the office, or the refusal to sell such tickets even if the office were open, would entitle a person to enter the train and be received as a passenger upon tendering the amount which would have been required to purchase the ticket at the reduced rate, when there had been no formal withdrawal of the published rule or notice, is a question not presented in this case. There was no rule or notice of any character published in the present case. Round-trip tickets had been sold in the past at a reduced rate. The railroad company in effect refused to sell such tickets on the day on which the plaintiff in error sought to purchase one. We think it had a right to do so; and, such being the case, the declaration set forth no cause of action and was properly dismissed.

We have not been able to find any case which rules the identical point now before us. Only two cases were cited by counsel in their argument which bear at all closely upon it. We do not think either one of these cases exactly in point. Counsel for defendant in error cited the case of Railroad Company v. Carroll, 13 Ill. App. 585. It was there held, that where a railroad company advertised to carry passengers from several points to another and return for one fare for the round trip, passengers who desired to avail themselves of this rate were chargeable with notice that when the round trip at one fare was so advertised it was necessarily implied that the trip could not be made for this fare unless the passengers purchased the special ticket provided for in the offer. The facts of that case were, that the plaintiff failed, on application to the agent at the station at which she boarded the train, to obtain the ticket, the agent having none of that character on sale. Upon payment of one half of the reduced rate, she was carried one way by the conductor, to whom she explained the circumstances, and was advised by him to see the agent at the place of destination about obtaining a ticket for the return trip. She did not apply to this agent at all, but boarded the train without a ticket. She tendered to the conductor one-half fare, which would have been the amount she would have had to pay had she obtained the special ticket. The conductor refused to receive this amount,

on the ground that she did not have a ticket, and ejected her from the train.   The facts of that case are not at all similar to those in the present case, and the decision is only helpful in so far as it recognizes that where an offer is made to carry a passenger at a rate of fare less than the usual rate, and the offer is accompanied with the statement that tickets will be sold at that rate, the prospective passengers are put on notice that they can avail themselves of this reduced rate only by purchasing a ticket before they enter the train.   Counsel for plaintiff in error cited the case of Railway Company *v.* Graham, 3 Ind. App. 28.   In that case it appeared that the railroad company ran an excursion-train between two points, and prior thereto advertised by "posters" along the line of road that the excursion-train would be run on a given date, stating the time of arrival and departure of the train at the various stations and the fare for the round trip.   The plaintiff went to one of the stations named in the posters, on the day named and before the time specified for the arrival of the train, and endeavored to procure a round-trip excursion ticket, but could not do so, for the reason that the company had negligently failed to have any tickets of this character at that station.   The excursion-train stopped at the station for the purpose of receiving passengers, and the plaintiff, being unable to purchase a ticket and having the money to pay the fare fixed in the posters, took passage upon the train, supposing he could buy a ticket from the conductor in charge of the train.   The conductor came to plaintiff to collect his fare, and he paid to him ninety-five cents, which was twenty-five cents in excess of the excursion rate, and demanded that he be carried and returned for that amount. The conductor accepted the same for the fare and gave plaintiff a receipt.   Upon the return of the train in the evening the plaintiff took passage to return to the station at which he had boarded the train, and the same conductor was in charge, and demanded that he should pay fare.   Whereupon plaintiff exhibited to him his receipt for the fare which had been paid, and refused to pay any more, but the conductor stopped the train and expelled plaintiff therefrom.   A demurrer to the complaint, which set up the above facts, was overruled, and

this judgment was affirmed; it being held that a carrier may run an excursion-train at reduced rates, and require passengers to purchase tickets as a condition upon which they obtain the benefit of such rates, and it may enforce such rule against all who by their own fault fail to comply with it; but that if a passenger, through the fault of the carrier, is unable to procure a ticket, he may take passage upon the train, and upon payment of the excursion rate he will be entitled to all of the rights that a ticket would afford him. The difference between this case and the present one is apparent. The published notice of the railroad company was that on the date named a train would be run from the station at which the plaintiff boarded it to another station, to which all persons who paid a given rate would be carried, the notice in effect saying that the company would provide means for supplying such persons with tickets. Therefore, when the plaintiff presented himself at the time and place fixed in the poster and the company failed to provide means for supplying him with a ticket, it was held that he had a right to board the train. Whether or not we would reach this conclusion in a similar case it is not necessary to now determine. For the reasons given above, we think the ruling made in that case is not applicable to the case now before us. The ruling made in the Graham case was followed by the same court in Railroad *v.* Breckett, 39 N. E. 429, in which one judge dissented.

*Judgment affirmed. All the Justices concurring.*