## PHILLIPS *v.* SOUTHERN RAILWAY COMPANY.

1. A railroad company can not lawfully demand of one passenger more fare for his transportation from one station to another upon its line than it is in the habit, under like conditions and circumstances, of charging others for the same service.

2. Although a railroad company has a right to adopt and enforce a rule requiring passengers getting on its trains without tickets to pay more fare than it charges persons who purchase tickets, yet it can not exact such higher rate from a passenger who has no ticket, unless it has afforded him a reasonable opportunity to purchase one before entering the cars.

3. Applying these principles to the allegations contained in the plaintiff's petition, it follows that such petition set forth a cause of action, and therefore the court erred in sustaining the motion to dismiss it.

Argued November 11,—Decided December 11, 1901.

Action for damages.    Before Judge Janes.    Haralson superior court.    January 23, 1901.

*James Beall* and *Edwards & Ault*, for plaintiff.
*Hugh M. Dorsey* and *Joel Branham*, for defendant.

FISH, J.  The plaintiff sued the Southern Railway Company for damages alleged to have been sustained by him by reason of his having been unlawfully expelled from one of its passenger-trains. Leaving out certain allegations in reference to the nature and extent of the injury, his petition made the following case.  " On the 14th day of January, 1899, the plaintiff applied to the defendant, through its agent R. L. Fields, at its ticket office at Bremen, Ga., to purchase a ticket from Bremen to Temple on its line of road, for the purpose of taking passage on the regular passenger-train, which was due to arrive at Bremen at about 9.45 o'clock a. m." He made the application to such agent " about thirty minutes before said train was due to arrive, and was told by [the] agent that he could not sell a ticket for said train to Temple, but that it was the custom to ask the conductor, when the train arrived, if he would have occasion to stop the train at Temple, and, if the train should stop at Temple, the conductor would accept plaintiff as a passenger on the same from Bremen to Temple, and would charge only the ticket rate of fare, which regular fare was twenty-five cents." When the train arrived at Bremen, the plaintiff ascertained from the conductor thereof that it would stop at Temple, and " he accordingly went aboard said train, under said instructions, for the purpose of making said trip from Bremen to Temple. . .  Soon after the train left Bremen, said conductor came to plaintiff to collect his fare, and plaintiff, having the exact change, handed him twenty-five cents, which he took but refused to accept as full fare for said trip, but demanded four cents per mile as train fare." Plaintiff declined to pay the additional charge, and was by the conductor ejected from the train.  " It was the custom of said defendant to accept and transport passengers from Bremen to Temple . . without tickets, and for only three cents per mile, on all occasions when said train would stop at Temple for any purpose."    When the case came on for trial, the defendant moved to dismiss it, on the ground that no cause of action was set forth in the petition. The court sustained this motion, and the plaintiff excepted.

1. We are clearly of opinion that the plaintiff's petition set forth a cause of action, and therefore the court erred in sustaining the motion to dismiss it.   If, relatively to this train, the custom or practice of the defendant company in conducting its passenger business from Bremen to Temple was as alleged in the petition, and the plaintiff, being informed of this custom by the ticket-agent of the defendant at Bremen, ascertained from the conductor of the train, upon its arrival at that place, that it would stop at Temple, and thereupon boarded it for the purpose of going to Temple, and, when the conductor came around. to collect his fare, paid to him the amount of the regular ticket fare, then the plaintiff had the right to be carried on that train to his destination, and the conductor could not lawfully eject him therefrom because he refused to also pay the difference between this fare and the fare usually required of persons getting on the defendant's trains without tickets.    If, under like circumstances, the defendant company was in the habit of carrying passengers from Bremen to Temple at the regular ticket rate of fare, it had no right, on this occasion, to demand of the plaintiff more than this rate, because to do so would be an unjust discrimination against him, which the company, by the laws of this State, was forbidden to make.    Civil Code, § 2188.    It was bound, under like conditions, to accept him as a passenger upon this train upon the same terms as those on which it habitually accepted others; and therefore it could not lawfully expel him from the train because he refused to pay more fare than it, under similar circumstances, was in the habit of charging others.

The defendant in error relies upon the decision rendered in *Johnson* v. *Georgia Railroad & Banking Co.*, 108 *Ga.* 496.    There the petition showed that the plaintiff, on a designated Sunday, went to the depot of the defendant at Dunlap, for the purpose of purchasing a round-trip ticket from that station to Crawford, another station on the defendant's line of road.    Dunlap was a regular ticket station, and it was the custom of the defendant to issue round-trip tickets, on Sundays, from Dunlap to Crawford, for the sum of twenty-four cents, which was less than the regular fare of three cents per mile.    The plaintiff, being aware of these facts, went to Dunlap about one hour and a half before the train was due upon which he desired to take passage, and remained there all the while and sought to procure a ticket, but the ticket-office was not open, nor was there

any person there to sell tickets, and hence he was unable to procure one. When the train arrived he got upon the same, and when the conductor came to him to collect his fare he stated to him that he desired to go to Crawford and return, and also the facts showing that the company had rendered it impossible for him to purchase a ticket before boarding the train. He then offered to pay the conductor twenty-four cents for the round-trip which he proposed to make. The conductor refused to accept this sum, but demanded of him the regular fare of three cents per mile, and, upon his declining to pay this amount, ejected him from the train. Upon these facts it was held, that the custom of the defendant company in selling round-trip tickets, on Sundays, for less than the regular ticket rate of fare was a purely voluntary one on its part, which it had the right to discontinue at any time, and that the fact that the ticket-office was closed and the ticket-agent absent on this particular Sunday was, prima facie, notice that the company had, at least as to that station and for that day, abandoned the custom, and that the offer to the public impliedly held out by such custom had been withdrawn, and therefore, in the absence of facts showing that such was not the intention of the company, when the plaintiff got upon the train for the purpose of making the round-trip between Dunlap and Crawford, he could not rely upon this custom to constitute a contract of carriage at the reduced rate which the company was formerly in the habit of charging. The facts set up in the petition in the present case are materially different. Here there is nothing whatever to show that the plaintiff had any notice, either actual or implied, that the defendant company had abandoned, or intended to abandon, the custom alleged in the petition and upon which the plaintiff relied when he entered the train, nor anything to show that the company had even temporarily abandoned such custom. On the contrary, when the plaintiff attempted, at Bremen, to purchase a ticket for his passage, on the train in question, from that place to Temple, and the ticket-agent refused to sell him one, he was informed by such agent of the existence of the custom and told upon what condition the railroad company would, under this custom, take him upon this train to Temple. Upon the arrival of the train, he ascertained from its conductor that this prerequisite condition existed and thereupon entered the train, and subsequently gave to the conductor the amount of fare which the company was in the habit

of charging others under the same circumstances. In the case cited by counsel the plaintiff sought to accept an offer which the defendant company impliedly held out to the public, but which, before he entered the train, he was bound to know had been withdrawn. In the present case the implied offer of the company was still pending, and the company could not, after the plaintiff had accepted it by performing his part of the contract, withdraw this offer. In the former case the implied offer of the company was withdrawn as to the public generally. In this case not only had the implied offer of the company not been withdrawn as to the public generally, but it was not even withdrawn as to the plaintiff until he had fully complied with its conditions.

2. Again, the courts of this county are quite uniform in holding that, although a railroad company has the right to adopt and enforce a rule or regulation requiring passengers getting on its trains without tickets to pay more fare than it charges persons who purchase tickets, yet it can not lawfully exact such higher rate from a passenger who has no ticket, unless it has first afforded him a reasonable opportunity to purchase one before entering the cars. This is the rule in this State. *Georgia Southern & Florida Ry. Co.* v. *Asmore*, 88 *Ga.* 529; *Central Railroad & Banking Co.* v. *Strickland*, 90 *Ga.* 562. See also *Ga. R. & Bkg. Co.* v. *Murden*, 83 *Ga.* 753. According to the allegations of the petition in the case now in hand, the defendant company did not afford the plaintiff any opportunity whatever to purchase a ticket, but, when he endeavored to procure one, refused to sell it to him. He was, therefore, not at all at fault in getting on the train without a ticket, and it is only when the fault is that of the passenger and not that of the railroad company that the latter can charge more than the ticket rate of fare as a penalty for getting on the train without first procuring a ticket. The company made it impossible for the plaintiff to purchase a ticket before getting on the train, and could not, therefore, require him, as a prerequisite to its acceptance of him as a passenger, to pay to it a penalty for his failure to do so. There is nothing in the petition which indicates that the demand which the conductor made upon the plaintiff for four cents per mile was predicated on any rule or regulation of the railroad company, under which it charged all persons desiring to take advantage of the exceptional opportunities afforded them of going from Bremen to Tem-

ple upon this particular train more than it charged its passengers generally. On the contrary, it is distinctly alleged that it was the custom of the company, whenever this train was going to stop at Temple, to take passengers from Bremen to that place at the regular ticket rate of three cents per mile, and it is also alleged that the conductor demanded of the plaintiff four cents per mile *as train fare.* It is unnecessary, therefore, to determine whether or not the defendant could have lawfully charged all passengers who might take this train, from Bremen to Temple, more than its regular ticket rate of fare, for the privilege of being carried to the latter place on this particular train. We may say, however, in passing, that we are inclined to think that it could not. It is clear that the conductor could not lawfully demand train fare, instead of ticket fare, of a person who had had no opportunity whatever to purchase a ticket, as a penalty for his not having a ticket. The conductor did not question the right of the plaintiff to be carried, on this occasion and on this train, from Bremen to Temple, but recognized such right by demanding fare of him. The plaintiff, then, stood upon the footing of a passenger rightfully on the train and rightfully there without a ticket, and, therefore, could not be lawfully ejected therefrom because he refused to comply with an unauthorized demand for the payment by him, in addition to the amount of the regular ticket fare, of the difference between that fare and the fare charged persons getting on trains without complying with the rule in reference to the purchase of tickets.

3. It follows from the foregoing that, taking the allegations of the petition to be true, the plaintiff was unlawfully expelled from the train by the conductor ; and consequently, as we have said, the court erred in sustaining the motion to dismiss the case.

*Judgment reversed.   All the Justices concurring.*