## ILLINOIS CENTRAL RAILROAD COMPANY *v.* ALLBRIGHT.

[No. 8,324. Filed February 20, 1913. Rehearing denied
June 26, 1913. Transfer denied October 10, 1913.]

1. CARRIERS.—*Passengers.—Tickets.—Validation.*—Where a round-trip ticket entitling the purchaser to passage over the line of a second carrier, provided that it was not good for return passage unless the holder identified himself to the satisfaction of the authorized agent of the terminal line at destination of ticket and procured the signature of such agent validating the ticket, such agent was for the purpose of validation the agent of the initial carrier, although the ticket further provided that the initial carrier sold the ticket as agent and was not responsible beyond its own line, and such initial carrier was liable for the expulsion of the plaintiff from its train on the return trip, resulting from the mistake or want of care on the part of such validating agent in not properly validating the ticket. p. 206.

2. CARRIERS.—*Passengers. — Expulsion. — Damages.*—A passenger entitled to ride as such, but the validity of whose ticket is disputed by the conductor, is not bound to pay his fare to such conductor to avoid expulsion, and, if wrongfully expelled, his recovery is not limited to reimbursement for the cash outlay occasioned thereby, but compensation may also be awarded for the humiliation and degradation imposed upon him. p. 208.

3. CARRIERS.—*Passengers.—Expulsion.—Damages.—Review.* — The question of the amount of damages that a passenger is entitled to for wrongful expulsion from a train must of necessity be left to the court or jury trying the cause, and the amount fixed by the verdict of a jury will not be deemed excessive unless it appears that such jury acted from prejudice, partiality or corruption. p. 209.

4. CARRIERS.—*Passengers.—Expulsion.—Damages.— Excessiveness.* —In a passenger's action for wrongful expulsion from a train,

where it was shown that the conductor refused to receive his ticket and wrongfully compelled him and his wife and child to leave the train, and that he had little money, and was put off at a place where he had no friends, the jury had a right to infer that he suffered feelings of shame and humiliation, so that it cannot be said that an award of $500 was excessive. p. 209.

From Superior Court of Vanderburgh County; *Alexander Gilchrist*, Judge.

Action by Thomas V. Allbright against the Illinois Central Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*J. E. Williamson, John G. Drennan, James E. Kepperley, Edgar A. Brown* and *J. Olias Vanier*, for appellant.

*R. F. Davis, Robinson & Stilwell* and *Cullop & Shaw*, for appellee.

ADAMS, J.—Action by appellee to recover damages for his alleged wrongful expulsion from one of appellant's passenger trains, while en route from New Orleans to St. Louis. Trial by jury, verdict and judgment for appellee in the sum of $500. The only error assigned by appellant and not waived arises on the overruling of its motion for a new trial.

The facts about which there is no controversy are briefly that appellee on February 4, 1908, purchased at the office of appellant in St. Louis, Missouri, two railroad tickets entitling him and his wife to be carried from St. Louis to New Orleans over appellant's line, and thence to Brownsville, Texas, and return. At New Orleans, additional tickets were issued to appellee by the Southern Pacific Railroad Company on the order of appellant. That part of appellee's ticket issued by appellant from St. Louis to New Orleans contained the following stipulations: "1. In selling this ticket and checking baggage hereon, this company acts as agent and is not responsible beyond its own line." "5. It is not good for return passage from New Orleans unless the holder identifies himself or herself to the satisfaction of the authorized agent of the terminal line at destination of

ticket, on or before the date cancelled in margin of this ticket as the original purchaser of this ticket, obtaining at the same time the signature of said agent and an impression of his dating stamp on the back of this contract in the spaces provided, after which this ticket will be good only for continuous passage to original starting point, commenced on date so stamped." "10. Unless all the conditions on this ticket are fully complied with, it shall be void. No agent or employe has any power to modify this contract. I hereby agree to all the conditions of the above contract." From New Orleans, appellee went to Brownsville, Texas. On the day of his departure, appellee presented the four tickets at the office of the Southern Pacific Company at Brownsville, and asked the agent to validate the same; that said agent did validate the tickets from Brownsville to New Orleans, and instructed appellee to have the tickets from New Orleans to St. Louis validated at New Orleans. Upon his arrival at New Orleans, appellee presented his ticket to St. Louis to appellant's agent, signed the same, and his signature was witnessed by said agent, who stamped the ticket and directed appellee to take passage on a particular train then standing in the train sheds. After the agent had witnessed appellee's signature, and stamped the ticket as a validation, some one in appellant's ticket office, without the knowledge or consent of appellee, drew a line across the signature of the agent and across the stamp mark on the ticket, and delivered the same to appellee who then passed through the gates and entered the St. Louis train, as indicated, and did not know or learn of any change of validation until after he had taken passage, and until near the town of Hammond, Louisiana. As to what occurred on the train, the testimony is conflicting. Appellee testified that soon after leaving New Orleans, the conductor took up the tickets, punched them and handed them back; that later, he returned and asked to see the tickets again, and upon examining them, said they were not good; that they were scalpers'

tickets. Appellee explained to the conductor where he had bought the tickets and all the facts with reference to validation. The conductor informed him that the tickets were not good, and that he would have to pay cash fare or be put off at Hammond. Appellee requested the conductor to telegraph the St. Louis office, called his attention to the personal descriptions and the signature, but the conductor refused to make further examination of the tickets. When the train reached Hammond, the conductor ordered appellee to leave the train, which he refused to do, whereupon the conductor instructed an officer at the station to take appellee off the train. In obedience to the order of the officer, appellee left the train and his wife and child were taken off by the conductor and brakeman. Appellee had but a small amount of money with him, and knew no one at Hammond.

It is manifest that the controlling question presented by the record relates to the status of appellee at the time of the expulsion. Was he a passenger or was he a trespasser? If a passenger, the judgment must be upheld, but if a trespasser, no right of action for damages arose, assuming that the expulsion was not accompanied by unnecessary force. The facts disclose that there was an error in the validation of the ticket, and that when presented to appellant's conductor, it was not in proper form. But, was appellee at fault? Was he required to do anything more than to present his ticket for validation and identify himself "to the satisfaction of the authorized agent of the terminal line at destination?" We think not. While the agent at Brownsville was in the employ of the Southern Pacific Railroad Company, he was, by the terms of the ticket, the agent of appellant for validation purposes, notwithstanding the stipulation that in selling the ticket, appellant acted as agent and was not responsible beyond its own lines. The mistake was due to a want of care or knowledge on the part of appellant's agent at Brownsville, the circumstances of which were fully explained to the conductor. In *Lake Erie,*

*etc., R. Co.* v. *Fix* (1882), 88 Ind. 381, 384, 45 Am. Rep. 464, the court said: "One who acts in good faith ought not to be deprived of his rights through the fault of the servant of the carrier who has undertaken to carry him safely. It is the duty of carriers to provide agents and servants who can, and will, properly protect the interests of passengers, and not by want of skill, lack of knowledge, or want of care, take from passengers rights for which they have contracted and paid." Again, at page 387, the court said: "The holding of our courts harmonizes with the well-recognized general rule that a passenger has a right to act upon the conduct and directions of agents of the corporation." See, also, *Pittsburgh, etc., R. Co.* v. *Hennigh* (1872), 39 Ind. 509; *Toledo, etc., R. Co.* v. *McDonough* (1876), 53 Ind. 289; *Pennsylvania Co.* v. *Bray* (1890), 125 Ind. 229, 25 N. E. 439; *Chicago, etc., R. Co.* v. *Graham* (1891), 3 Ind. App. 28, 29 N. E. 170, 50 Am. St. 256; *Cleveland, etc., R. Co.* v. *Beckett* (1894), 11 Ind. App. 547, 39 N. E. 429. In the case of *Indianapolis St. R. Co.* v. *Wilson* (1903), 161 Ind. 153, 66 N. E. 950, 67 N. E. 993, 100 Am. St. 261, appellee took passage on one of appellant's street cars, paid his fare and asked for a transfer to a certain other line. Arriving at the transfer point, appellee boarded the car to which he had asked to be transferred and tendered his transfer ticket to the conductor which the conductor refused to accept claiming that it was to another line, and demanded that appellee pay his fare or leave the car. Appellee explained that he had asked for a proper transfer and had received the one tendered, and refused to pay fare. He was forcibly ejected. Appellant insisted that appellee had ample time and opportunity to inspect his transfer ticket, and ascertain whether it was correct or not. The court on page 157 said: "The duty of inspection, under the circumstances, the law did not exact of him, for, in the absence of any notice to the contrary, he had a right to presume that appellant's conductor and agent had correctly discharged his duty in punching the ticket, and there-

by indicating the transfer over the line in accordance with his request.''

It is also claimed by appellant that the damages are excessive, and that under no view of the case could appellee be entitled to more than a reimbursement for his cash 2.   outlay; that when he was advised by the conductor that his ticket would not be honored, he should have paid his fare, and by so doing would have avoided all other inconvenience and damage.   This would doubtless be true, unless some element of special damage entered into the occurrence, but appellee was not bound to pay his fare.   In the case of *Jeffersonville R. Co.* v. *Rogers* (1867), 28 Ind. 1, 6, this court said:   ''No man is bound to submit to even a trifling extortion.   If he had a right to be carried for the sum tendered to the conductor, then the expulsion was purely wrongful, and for the consequences thereof the defendant was liable.   The plaintiff was under no obligation to purchase even for a trifle the right which was already his own.'' As to the measure of damages recoverable in a case of this kind, the court, in *Pennsylvania Co.* v. *Bray, supra,* said on page 238:   ''Appellant asked the court to instruct the jury that appellee was only entitled to recover the additional amount of fare the appellee was compelled to pay and no more.   This was clearly erroneous, and the court properly refused to give it.   The appellee was entitled, under such circumstances, to recover damages for the humiliation suffered and the indignity done him.''   Again in *Lake Erie, etc., R. Co.* v. *Fix, supra,* the court on page 387 said:   ''In estimating compensatory damages, it is proper to consider the humiliation and degradation imposed upon the injured person by the wrong done him.   The fact that the wrong is done under circumstances of peculiar indignity and degradation is to be considered as an element of compensation, even in cases where vindictive damages cannot be given.'' In 3 Wood, Railway Law §364, it is said:   ''Thus, where a party is forcibly and unlawfully ejected from a car, in the

Illinois Central R. Co. *v.* Allbright—54 Ind. App. 203.

presence of other passengers, and the conductor publicly announces that the passenger has refused to pay his fare, a jury may properly find from such facts that the party thus ejected suffered fellings of shame and humiliation, without any other proof on that subject."

In cases of this kind, there is no rule by which damages can be definitely measured, and it must of necessity be left to the court or jury trying the cause to fix the sum 3. to which the complainant is entitled as compensation.

The rule is that a verdict will not be set aside on the ground that damages are excessive, unless it appears that the jury acted from prejudice, partiality or corruption. In *Louisville, etc., R. Co.* v. *Kemper* (1899), 153 Ind. 618, 630, 53 N. E. 931, quoting from Chancellor Kent, the court said: "Unless the damages are so outrageous as to strike every one with the enormity and injustice of them, so as to induce the court to believe that the jury must have acted from prejudice, partiality or corruption, the court cannot consistently with the precedents, interfere with the verdict. It is not enough to say, that in the opinion of the court, the damages are too high, and that we would have given much less. It is the judgment of the jury, and not the judgment of the court, which is to assess the damages in actions for personal torts and injuries."

In the case before us, it is shown by the proof that appellant's conductor refused to receive appellee's ticket, refused to accept appellee's statement as to the circumstances 4. attending the validation, and wrongfully compelled appellee, his wife and child to leave the train. The jury had a right to infer from these facts that appellee suffered feelings of shame and humiliation. The assessment of damages does not at first blush appear to be excessive. *Creamery, etc., Co.* v. *Hotsenpiller* (1902), 159 Ind. 99, 105, 64 N. E. 600; *Illinois Cent. R. Co.* v. *Cheek* (1899), 152 Ind. 663, 678, 53 N. E. 641.

Finding no reversible error in the record, the judgment is affirmed.

NOTE.—Reported in 100 N. E. 885. See, also, under (1) 6 Cyc. 571, 557; (2) 6 Cyc. 566; (3) 13 Cyc. 121. As to liability of carrier for mistakes or misrepresentations of ticket agents, see 122 Am. St. 638. On the question of mental suffering as element of damages for wrongful expulsion from vehicle of common carrier, see 12 L. R. A. (N. S.) 184. As to the responsibility assumed by one corporation in issuing tickets good on line of another, see 42 L. R. A. (N. S.) 76. On the duty of a connecting carrier to passenger holding coupon ticket, as affected by delay on part of the other carriers, see 25 L. R. A. (N. S.) 459. As to the right of a carrier to eject a passenger holding a ticket invalid through its fault, see 9 Ann. Cas. 889; Ann. Cas. 1912 C 730.