48 So.2d 193

**BIRMINGHAM SLAG CO. v. BIRMING-
HAM WATER WORKS CO.**

6 Div. 948

Supreme Court of Alabama.

Oct. 12, 1950.

Jackson, Rives, & Pettus, all of Birmingham, for appellant.

Borden Burr, of Birmingham, for appellee.

SIMPSON, Justice.

Bill in equity by appellant, Birmingham Slag Company, against appellee, the Birmingham Water Works Company, a public utility, to, in effect, modify or reform a certain contract for the construction of water mains, executed in 1927 between the appellee water company and appellant's predecessor in interest, on the ground that the benefits prayed to be granted had previously been granted to two other patrons of appellee, which resulted in such an unlawful discrimination as to entitle the appellant to the same relief.

Without questioning the equity of the bill, the trial court considered the case on the merits, so we will review it accordingly.

The appellant's predecessor in interest was developing a real estate subdivision in the Birmingham area and, in 1927, contracted with the appellee water company for the laying of water mains by the water company in the subdivided area. The contract in substance provided that the developer deposit with the utility an amount of money based upon the estimated cost of extending the service into that area and that the utility would make refunds in repayment to the developer annually for a period of ten years at a rate equal to fifty per cent of the proceeds from the service rendered in the extended area, less any cash refunds to customers. The provision was specific relative to the duration of the refunds as follows: " * * * *provided, however, that such refunds shall cease at the expiration of ten years from the date hereof. * * * *" (Emphasis supplied.) Appellant, in 1930, acquired the real estate and all interest of its predecessor in the water main contract.

As stated, the bill sought (1) a modification of the contract to extend the period for the aforesaid annual refunds beyond the

ten-year period, or such an indefinite period until the original deposit shall have been returned; and (2) for the difference between the amount actually deposited and the actual cost of the development.

The bill was filed in 1946 after removal of the cause from law in an action filed in 1943.

The trial court denied relief in both instances and decreed as follows:

"From aught appearing, the utility was under no obligation to furnish services to the developer at the time. It could do so, or it could refuse so to do. Moreover, the contract did not provide basically that the developer pay for the extension. It provided, that complainant as a condition precedent to making the extension deposit the estimated cost or an agreed proportion thereof with the utility. Under the terms of the contract there was no provision by which the utility could later require the developer to put up more money if the estimate was low, and there was no specific provision that any amount would be returned to the developer if the estimate was high. It did provide for a 'ten year annual refund' as set forth. While there is an allegation that the estimate was made in bad faith, the testimony does not so disclose nor does it disclose that the estimate was tainted with fraud or deceit.

"Pretermitting a discussion of the Statute of Limitations, Laches, etc., the Court is of the opinion that the utility was, within certain limitations not pertinent here, in a position to contract with the developer with respect to extending its lines preparatory to service, in the same manner that the developer would have been to have contracted with a private individual whose business was not impressed with a public interest. Therefore the rule of discrimination would not apply. Moreover, if the rule of discrimination should apply, the court is of the opinion that complainant would have to show more to prove such discrimination than that certain other developers had been granted more favorable terms than complainant.

"In this view of the case, the Court is of the opinion that complainant is not entitled to recovery. * * *"

■ We agree. The evidence clearly warranted the conclusion. The plaintiff has shown no right to relief. No extended discussion seems necessary and we also pretermit consideration of the question of laches and the statute of limitation.

The cases cited by appellant from the published reports of the various state public service commissions dealing with regulatory rules governing public utilities in the matter of discrimination against patrons or the public they are obligated to serve are inapposite here to influence decision. There may be decisions of some of the commissions condemning the method adopted here with reference to making the main extensions, but here the method was pursued, contracts with similar provisions had had the approval of our own public service commission since 1925, and the parties to the contract here considered acted under it.

■ General principles of utility obligations must perforce give way to contracts executed by parties dealing at arm's length, designed to benefit one who desires his property developed by the services of a utility, which is under no obligation to serve the area. So far as appears, when the contract was made by appellant's predecessor, the water company was under no duty to furnish water to that real estate developer, nor to anyone else in that area. Appellee had a duty to serve the areas already undertaken and such contiguous territory as might rightfully demand the benefit of such service, and in the discharge of that duty it had a right to protect itself and the public it was obligated to serve against any hazardous extension of its lines it was not obligated to make which might hamper its ability to so serve them, and seemingly did so by the contract exhibited. Because later two original developers, not similarly situated as the appellant, were able to procure beneficial contracts with reference to additional refunds, gives appellant no standing in court for a reformation of its already expired contract.

■ While it is a primary duty of a public utility to serve on reasonable terms all those who desire the service rendered without unjust discrimination, this duty

is restricted to the members of the public to whom its public use or scope of operation extends. 43 Am.Jur. 586, § 22. A utility, in making a contract with applicants for the extension of service into an area not previously served and in reference to which it has no existing contracts of service, and which it owes no obligation to serve, has a right, within limits not here necessary to specify, to make such contract for the extension of such lines as may be agreed upon between itself and the applicant, so long as the contract thus made does not interfere with the public interest or impair or restrict the service of the utility or the power of the utility to render service to the public which it is already under obligation to serve. If there was no duty to serve, then no just claim of discrimination was available as a basis for equitable relief. 43 Am. Jur. 599, § 42.

The principle is well illustrated in the federal case of Atchison, T. & S. F. Ry. Co. v. Tiedt, 7 Cir., 196 F. 348, 350, certiorari denied 225 U.S. 702, 32 S.Ct. 836, 56 L.Ed. 1264. Though the two cases are not factually the same, the *ratio decidendi* of the Atchison case is apposite here. There, there was an attempt on the part of a park owner to require the railroad company to send special trains to his park, which previously had been its custom, on the ground that it was similarly serving another park. The court said:

"If a duty rests upon a public service corporation to afford facilities independently to each of two persons, industries, or localities, the service must be rendered on substantially equal terms, impartially, without undue discrimination. But if no duty in law exists to serve either, then the giving to one of what is not owed cannot be a basis for the other's complaint of unlawful discrimination; that is, back of any question of unlawful discrimination must lie the duty to serve.

"It is usually said that a common carrier's duty is to serve the public. In a general sense this is true, for latently the right to be served is in the public; but the carrier's duty arises only when some individual demands a service that is common, that is

due to him as a member of the public. And if the individual separates himself from the public, and demands the use of the carrier's property or facilities, not in the common right, but for his own separate profit or advantage, the carrier may either refuse or, within certain limits, obligate itself to give the special privilege. We say 'within certain limits,' for in the public interest the carrier cannot be permitted to incapacitate itself for the full performance of its public obligations. These principles are sufficiently illustrated in The Express Cases, 117 U. S. 1, 6 S.Ct. 542, 628, 29 L.Ed. 791; Lake Shore, etc., Ry. Co. v. Smith, 173 U.S. [684] 697, 19 S.Ct. 565, 43 L.Ed. 858; Donovan v. Penn. Co., [7 Cir.] 120 F. 215, 57 C.C.A. 362, 61 L.R.A. 140, affirmed in 199 U.S. 279, 26 S.Ct. 91, 50 L.Ed. 192; Johnson v. Georgia R. Co., 108 Ga. 496, 34 S.E. 127, 46 L.R.A. 502; State ex rel. Skeen v. Ogden Rapid Transit Co., 38 Utah 242, 112 P. 120; 1 Wyman on Public Service Corporations, § 757."

Other theories might be advanced, but we think the foregoing suffices to illustrate beyond question the soundness of the ruling of the trial court on the question.

■ We also affirm as correct the ruling denying the claim for a refund of the difference between the amount deposited by the original developer for the estimated cost of extending the mains and the amount actually required to do the work. There was no proof of bad faith in regard to the making of the estimate and the court so found. Had the estimate been too little, as pointed out in the decree, there was no obligation on the part of the developer—and certainly not on the part of this appellant—to make up any deficiency. The matter of the estimate and of the amount of the deposit were clearly proper questions of correct prejudgment, matters of contract between the parties, and cannot at this late date be made the subject of judicial controversy.

Affirmed.

FOSTER, LAWSON, and STAKELY, JJ., concur.